## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

| | | |
|---|---|---|
| ALIEDA MARON, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No: |
| v. | ) | |
| | ) | 4:22-cv-00255-RH-MAF |
| JIMMY T. PATRONIS, JR., in his official capacity as the Chief Financial Officer of the State of Florida, | ) ) ) ) | |
| | ) | |
| Defendant. | ) ) | |

## PLAINTIFF'S *AMENDED* MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................. iii

INTRODUCTION................................................................................ 1

FACTS AND BACKGROUND ............................................................ 6

ARGUMENT...................................................................................... 10

I.     MOTION TO DIMISS STANDARD ....................................... 10

II.    THE COMPLAINT STATES ACTIONABLE CLAIMS
UNDER THE TAKINGS CLAUSES OF THE FIFTH
AMENDMENT, AS APPLIED TO THE STATES BY THE
FOURTEENTH AMENDMENT, AND ARTICLE X,
SECTION 6 OF THE FLORIDA CONSTITUTIOIN ........... 11

     A. The Contours of a Takings Claim ..................................... 11

     B. The Act Effects a Taking Requiring Just
Compensation by Mandating Public Use of Unclaimed
Property in the State's Custody ........................................ 14

     C. Defendant's Custody-Focused Arguments
are Unavailing ................................................................... 19

III.    PLAINTIFF HAS STANDING AND RIPE CLAIMS ........... 27

     A. Standing/Injury................................................................. 28

     B. Causation .......................................................................... 29

     C. Injury Redressable Through Judgment ........................... 30

IV.    SOVEREIGN IMMUNITED DOES NOT BAR PLAINTIFF'S
CLAIMS ................................................................................. 31

A. *Ex-Parte Young* Exception Applies ................................... 31

B. Florida Has No Sovereign Immunity for
Takings Claims ................................................................. 34

CONCLUSION ..................................................................... 37

CERTIFICATE OF SERVICE ................................................................

# TABLE OF AUTHORITIES

## <u>Cases</u>                                                      <u>Page(s)</u>

*Anderson Nat. Bank v. Luckett,*
    321 U.S. 233(1944) ........................................................... 23

*Ark. Game & Fish Comm'n v.*
    568 U.S. 23 (2012) ...................................................... 13-14

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..................................................... 10-11

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .......................................................... 11

*California State Lands Comm'n v. Davis,*
    142 S. Ct. 231 (2021) ................................................. 13, 35

*Cerajeski v. Zoeller,*
    735 F.3d 577 (7th Cir. 2013) .............................. 15-16, 18, 19-20, 33-34

*Chicago, B. & Q.R. Co. v. Chicago,*
    166 U.S. 226 (1897) .......................................................... 12

*Chmielewski v. City of St. Pete Beach,*
    890 F.3d 942 (11th Cir. 2018) ...................................... 12, 14

*Commonwealth Edison Co. v. Vega,*
    174 F.3d 870 (7th Cir. 1999)........................................... 22-23

*Dep't of Fin. v. AT&T Inc.,*
    253 A.3d 537 (Del. 2021) ............................................. 23-24

*Dep't of Revenue v. Kuhnlein,*
    646 So. 2d 717 (Fla. 1994) ........................................... 34-35

Cases                                                                **Page(s)**

*Edelman v. Jordan*,
   415 U.S. 651 (1974) ............................................................... 32

*Ex parte Young*,
   209 U.S. 123 (1908) ....................................................... 5, 31-34

*First English*,
   482 U.S. 304 (1987) ...................................................... 17, 36

*Gonzaga Univ. v. Doe*,
   536 U.S. 273 (2002) ............................................................ 11

*Hooks v. Treasurer*,
   961 So. 2d 425 (La. App. 1 Cir. 1007) ................................. 25

*Horne v. Dept. of Agriculture*,
   576 U.S. 350 (2015) ............................................... 13, 14, 26

*In re Venoco LLC*,
   998 F.3d 94, 110 (3d Cir.), *cert. denied sub nom* ........................... 13, 35

*Kessler v. City of Key W.*,
   2022 WL 590892 (11th Cir. Feb. 28, 2022) (per curiam) .................... 13

*Knick v. Twp. of Scott, Pa.*,
   139 S. Ct. 2162 (2019) ......................................... 5, 13, 27-28, 30, 36-37

*Kolton v. Frerichs*,
   869 F.3d 532 (7th Cir. 2017) ................................................. 18-19, 24

   458 U.S. 419 (1982) ................................................................

*McKenzie v. Florida Dept. of Financial Services*,
   Case No. 04 CA 755 (2nd Jud. Cir., Leon County Apr. 27, 2005) .... 22-25

*United States*,
   148 U.S. 312 (1893) ................................................................

*MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*,
40 F.4th 1295 (11th Cir. 2022) ............................................................ 11

*Murr v. Wisconsin*,
137 S. Ct. 1933 (2017) ................................................................. 13, 26

*Pennhurst State Sch. & Hosp. v. Halderman*,
465 U.S. 89 (1984) ................................................................................ 31

*Siebers v. Barca*,
2022 WL 2438605 (W.D. Wis. Jul. 5, 2022) ........................................ 33

*Simon v. Weissman*,
301 Fed. App'x 107 (3d Cir. 2008) ....................................................... 24

*Sogg v. Zurz*,
905 N.E.2d 187 (Ohio 2009) ............................................. 15, 19, 21, 24

*Support Working Animals, Inc. v. DeSantis*,
457 F. Supp. 3d 1193 (N.D. Fla. 2020) ................................................ 31

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*,
535 U.S. 302 (2002) ............................................................. 12, 13, 16

*Texaco Inc. v. Short*,
454 U.S. 516 (1982) ............................................................20-22, 23-24

*United States v. Clarke*,
445 U.S. 253 (1998) .........................................................................35-36

*Washington Legal Found. v. Tex. Equal Access to Justice Found.*,
270 F.3d 180 (5th Cir. 2001) ..........................................................16-17

*Webb's Fabulous Pharmacies, Inc. v. Beckwith*,
449 U.S. 155 (1980) ........................................................... 16, 18, 22, 29

## <u>Statutes and Rules</u>

Fla. Stat § 717.123(1) ................................................................... 7

Fla. Stat § 717.124(4)(a) ...................................................... 1, 7, 9

Fla. Stat. § 717.102 .................................................................... 6

Fla. Stat. § 717.119(1) ............................................................... 6

Fla. Stat. § 717.122(1) ............................................................. 6-7

Article X, Section 6(a) of the Florida Constitution ......................... *passim*

42 U.S.C. § 1983 ........................................................... *passim*

Federal Rule of Civil Procedure 12(b)(6) ....................................... *passim*

Plaintiff Alieda Maron ("Plaintiff"), by and through her undersigned attorneys, submits this Memorandum of Law in Opposition to Defendant's Motion to Dismiss.

## INTRODUCTION

Plaintiff brings this action challenging the constitutionality under the Fifth and Fourteenth Amendments to the United States Constitution of the provision of the Florida Disposition of Unclaimed Property Act, Section 717.124(4)(a) (the "Act"), which requires the Defendant to take for public use, without just compensation, private property that the State of Florida ("Florida" or the "State") classifies as "presumed abandoned" pursuant to the provisions of the Act.  This action also challenges the Act under the Takings Clause of Article X, Section 6(a) of the Florida Constitution.

Count I of the Complaint seeks declaratory and injunctive relief under 42 U.S.C. § 1983 and under the United States Constitution on behalf of all current owners of unclaimed property held by State officials in the form of money.  Count II seeks identical relief, with respect to the Takings Clause of the Florida Constitution.  Defendant, Jimmy T.

1

Patronis, Jr., Florida's Chief Financial Officer ("CFO"), is the Florida official responsible for administering the Act.

A "taking" occurs under the Fifth Amendment, as explained, when the government appropriates and makes public use of private property. As the Complaint explains, and the State confirms (Motion to Dismiss, Doc. 9 at 6), the Act requires the State to deposit unclaimed private property delivered to the CFO's custody into Florida's school fund, and other State funds, for the CFO's use alongside the other State funds, to be invested with those other funds for the public benefit and to be spent on public initiatives along with those other funds. In other words, although the Act provides that the CFO take unclaimed property into his custody, it then mandates comingling of unclaimed property with public funds, to be spent and invested as public funds. Yet, as Defendant acknowledges, the Act provides for no compensation to the private property owners for the public use of the unclaimed property while in the CFO's custody. Thus, the Act provides the State with the free use of unclaimed private property, without any obligation to pay just compensation for the public use of that private property.

Other courts have held unconstitutional under the Takings Clause the unclaimed property statutes of other states because those statutes provided, like the Act, that unclaimed property was to be put to public use without compensating the property owner.

The CFO ignores Plaintiff's focus on the State's mandated public use of private property without just compensation.  Instead, Defendant misstates Plaintiff's claim as seeking necessarily the payment of interest (rather than just compensation generally) and only because Florida has custody of Plaintiff's private property.  Defendant, however, misses the point – *the taking here is not mere custody of unclaimed property; it is the use of the unclaimed property for public benefit while in State custody*.  The comingling of unclaimed property with the State School Fund for public use is not a passive, inertia-driven occurrence; it is an act of the CFO, mandated by statute.

Defendant never genuinely addresses Plaintiff's claim that the State's *use* of unclaimed private property *for public purposes* while that property is in the CFO's custody under the Act is a taking that requires just compensation under the Takings Clause.  Rather, the State deems it self-evident that its free use of the property is permissible. The

CFO is not entitled to the free public use of unclaimed property while such property remains in his custody. Unclaimed property is not some sort of interest-free loan available to Florida.

Plaintiff does not claim she is necessarily entitled to the interest or other profit that the State may have earned on her property. Rather, she claims that by prohibiting the State from compensating her for the public use of her private property, the Act deprives Plaintiff of just compensation mandated by the Fifth Amendment.

There are many ways the required just compensation can be measured. It may be just, for instance, for the State to pay property owners an annual rate of interest, such as the rate the State would pay on delayed condemnation payments, an analogous situation. Another potential measure of just compensation is payment equal to the cost the State pays to borrow money in the marketplace. Another would be the State's actual rate of investment return on the funds it invests (including the unclaimed property) in the State School Fund. Another might be the interest rate payable as prejudgment interest in the State. Regardless, when a taking occurs, as here, the payment of just compensation is required.

Plaintiff has standing under Article III to bring her claim for declaratory relief. "Because of the self-executing character of the Takings Clause with respect to compensation, a property owner has a constitutional claim for just compensation at the time of the taking." *Knick v. Twp. of Scott, Pa.*, 139 S. Ct. 2162, 2171 (2019) (internal quotation marks omitted). The Complaint clearly – and beyond plausibly – asserts a ripe, actionable claim for violations of the Takings Clause, for which Plaintiff has standing, and her injury will be redressed by a favorable outcome

The State contends that the Eleventh Amendment and sovereign immunity requires dismissal. However, the Complaint seeks only prospective relief, placing Plaintiff's claims within the well-established exception to the Eleventh Amendment set forth by *Ex parte Young*, 209 U.S. 123 (1908).

Further, the Supreme Court recently recognized that because the Fifth Amendment's Takings Clause is self-executing, a claim in federal court for just compensation arises immediately upon the taking. Thus, even if Plaintiff was seeking retrospective relief, the self-executing nature of the Taking Clause, as applied to the State by the Fourteenth

Amendment, effectively waives any sovereign immunity the State might have against being sued in Federal court for Federal taking claims. In any case, the Florida Supreme Court has held that the State enjoys no sovereign immunity for constitutional violations.

The Court should deny the State's motion to dismiss.

## FACTS AND BACKGROUND

The Act provides that private property is "presumed abandoned" if the owner or apparent owner has not communicated in writing with the holder concerning the property or has not otherwise given an indication of interest in the property for a certain period of time. Fla. Stat. § 717.102. The purpose of the Act is twofold: first, to reunite owners with their property, and second, to allow the State rather than the holder to use the property before it is reunited with its owner. Complaint, Doc. 1 ¶ 15.[1]

Once a holder determines property in its possession is "presumed abandoned" within the meaning of the Act, the holder is required to attempt to notify the owner and, if the property is not claimed by the owner, to deliver the property into the custody of the CFO. Fla. Stat. § 717.119(1). If the property is not cash, securities or negotiable

---

[1] References to "¶ __" are to paragraphs of Plaintiff's Complaint.

instruments, Defendant must sell the property within a reasonable time to the highest bidder at a public sale or, if publicly traded, at prevailing market prices. Fla. Stat. § 717.122(1).

The unclaimed property and proceeds from the sale of unclaimed property are held by the State in custody for the owner, who can reclaim the property from the State at any time. Fla. Stat § 717.124. However, the State will only pay to the property owner the amount the State received into custody or the proceeds from the property's sale under the Act: the CFO will not pay any compensation for the State's use of that property while it was in the State's custody. Fla. Stat § 717.124(4)(a). ¶ 16.

The Act directs the CFO to deposit all funds received pursuant to the Act, including funds from the liquidation of property, into the State School Fund, except for mandatory deposits to a "Unclaimed Property Trust Fund" that must contain a sum "not exceeding $15 million" from which the State shall pay owner claims and the State's costs incurred "in administering and enforcing" the Act.  Fla. Stat § 717.123(1).    ¶ 17. When claims plus administrative expenses exceed the sum in the

Unclaimed Property Trust Fund, funds are transferred from the State School Fund to that trust fund for those purposes. *Id.*

The CFO acknowledges that the State holds over $3.5 billion of unclaimed property, and that it paid out $358 million in unclaimed property claims in 2021.  ¶ 18.  The CFO receives, as custodian under the Act, more than $100 million in new unclaimed property every year. *Id.*

Thus, under the Act, at least $85 million in unclaimed property is transferred to the custody of the State pursuant to the Act and deposited into the State's School Fund every year. ¶ 19.  There it earns interest, dividends, or other accruals and/or is held in interest-bearing accounts or other investment instruments. ¶ 19. By law, such interest, dividends, accruals, and other investment returns must inure to the sole benefit of the State's School Fund, which means it is used to pay for State operation; namely, public schools.  ¶¶ 6 & 19.

Unlike an escheat statute, in which actual title to abandoned property may eventually vest in the State after certain due process procedures are followed, the Act is purely custodial in nature, and title to abandoned property is never transferred from the owner to Florida. ¶ 20:

*see* Fla. Stat. Chapter 717, Thus, title and ownership always remain with the original owner of the property.  *Id.*

The State does not compensate an owner of unclaimed property for interest, dividends, or other earnings or accruals on the property after deposit with the State, the loss of the beneficial use of the property or its time value while it is in State custody.  Fla. Stat. § 717.124(4)(a); ¶ 21. So, the State does not pay just compensation to any owner for the State's use of their private unclaimed property while it is in State custody.  Both the State's "State Treasure Hunt" website and Fla. Stat. § 717.124(4)(a) make this clear:  "[I]f a claim is determined in favor of the claimant, the State shall deliver or pay over to the claimant the property or the amount the department actually received or the proceeds if it has been sold by the department …."  *Id.*

According to the Defendant's online records, Defendant holds Plaintiff's property in custody. The State describes the property as "premium refunds on individual," and it is in the amount of $26.24.  ¶ 24. Plaintiff is the owner under the Act with respect to that property. Defendant has at all times since delivery held Plaintiff's property in custody subject to its being claimed by or on behalf of Plaintiff.  ¶ 24.

While the Defendant held Plaintiff's property in custody, pursuant to the Act, the CFO has used the property for public purposes, including by investing the property and earning interest, and otherwise using it to fund the State's operations and programs, including the School Fund. ¶ 25. Under the Act, when Plaintiff claims her property, the State will pay her a cash payment equal to the amount of the unclaimed property, but it will not pay her just compensation for its public use of that property during the period of custody. ¶ 26.

Defendant Jimmy T. Patronis, Jr. is the current Chief Financial Officer of Florida. ¶ 12.

## ARGUMENT

## I.   MOTION TO DISMISS STANDARD

Defendant has moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) & (6). In response to a 12(b)(1) motion, a plaintiff need only point to facts in the complaint that support the Court's jurisdiction over her claims. *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At the motion to dismiss stage, while "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*, 40 F.4th 1295, 1302 (11th Cir. 2022).

## II. THE COMPLAINT STATES ACTIONABLE CLAIMS UNDER THE TAKINGS CLAUSES OF THE FIFTH AMENDMENT, AS APPLIED TO THE STATES BY THE FOURTEENTH AMENDMENT, AND ARTICLE X, SECTION 6 OF THE FLORIDA CONSTITUTION

### A. The Contours of a Takings Claim

Section 1983 of Title 42 of the United States Code creates a private cause of action to redress constitutional wrongs committed by state officials. 42 U.S.C. § 1983. The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002). To state a Section 1983 claim, a plaintiff must show a deprivation

of a right secured by the Constitution or the laws of the United States by a person acting under color of state law.  *See* 42 U.S.C. § 1983.  The CFO does not dispute he is a state actor.

Count I alleges a claim under Section 1983 for violations of the Takings Clause of the Fifth Amendment, which provides: "... nor shall private property be taken for public use without just compensation." U.S. Const., Amend. V.   It applies to the states as well as the federal government. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 307 n.1 (2002); *Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226, 239, 241 (1897).

Count II alleges a violation of the Takings Clause of Article X, § 6(a) of the Florida Constitution, which provides protections identical to those of the Fifth Amendment's Takings Clause. *Chmielewski v. City of St. Pete Beach*, 890 F.3d 942, 949 (11th Cir. 2018).  Defendant makes no effort to substantively distinguish between Article X, Section 6(a), and the Fifth Amendment's Takings Clause.  For purposes of this analysis, accordingly, Plaintiff solely analyzes jurisprudence concerning the Fifth Amendment's Takings Clause.

The Supreme Court has recognized that the plain language of the Takings Clause "requires the payment of compensation whenever the government acquires private property for a public purpose." *See Murr v. Wisconsin*, 137 S. Ct. 1933, 1942 (2017); *Tahoe–Sierra Pres. Council, Inc.*, 535 U.S. at 321. The Fifth Amendment's Takings Clause, as applied to the states through the Fourteenth Amendment, prohibits governments from seizing private property for public use without providing just compensation. *Kessler v. City of Key W.*, 2022 WL 590892, at *5 (11th Cir. Feb. 28, 2022) (per curiam). The Supreme Court recognizes that the Takings Clause of the Fifth Amendment is "self-executing," requiring states to provide a specific remedy for takings in their own courts. *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2172 (2019); *In re Venoco LLC*, 998 F.3d 94, 110 (3d Cir.), *cert. denied sub nom.*, *California State Lands Comm'n v. Davis*, 142 S. Ct. 231 (2021). The claim in federal court for just compensation arises immediately at the time of the taking. *Knick*, 139 S. Ct. at 2171. "The Government has a categorical duty to pay just compensation" upon a taking. *Horne, v. Dept. of Agriculture,* 576 U.S. 350, 358 (2015).

"No magic formula enables a court to judge, in every case, whether a given government interference with property is a taking." *Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 31 (2012).  Yet, the Supreme Court has repeatedly held that "the 'classic taking [is one] in which the government directly appropriates private property for its own use.'" *Horne*, 576 U.S. at 357-58 (quoting *Tahoe–Sierra Pres. Council, Inc.*, 535 U.S. at 324).  "[I]n the case of real property, such an appropriation is a *per se* taking that requires just compensation." *Id.* at 358 (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426–435 (1982)).  Governmental appropriations of personal property for public use also constitute *per se* takings.  *Id.* at 360.  Even a temporary or intermittent invasion of private property can trigger physical takings liability. *Chmielewski*, 890 F.3d at 950.  The Takings Clause "protects 'private property' without any distinction between different types." *Horne*, 576 at 358.

**B.**   **The Act Effects a Taking Requiring Just Compensation by Mandating Public Use of Unclaimed Property in CFO's Custody**

Within the last 15 years, several federal and state courts have considered the constitutionality of various other states' unclaimed

property statutory schemes that, like Florida's, mandate the public use of unclaimed property while the property is in state custody.  Courts have declared unconstitutional the unclaimed property statutes of three states as violations of the Takings Clause or its state constitutional analogue, requiring just compensation for the takings.

First, in *Sogg v. Zurz*, 905 N.E.2d 187, 192 (Ohio 2009), the Ohio Supreme Court upheld a claim that Ohio's unclaimed property law violated the analogue to the Fifth Amendment's Takings Clause in the Ohio Constitution as to interest earned on unclaimed funds.  Like the Florida Act, the Ohio unclaimed property statute provided that title remained with the property owners "in perpetuity" until a claim was made, and it required the state to make public use of the earnings the state realized on the unclaimed property it invested while in state custody. *Id.* at 189-90.  The Ohio Supreme Court held that the state could not control and use interest earned on the unclaimed property without compensating the property owner.  *Id.* at 191-92.

Then, in *Cerajeski v. Zoeller*, 735 F.3d 577 (7th Cir. 2013), the Seventh Circuit considered a challenge to Indiana's unclaimed property statute.  Like Florida's, Indiana's statute was purely custodial, with title

to unclaimed property remaining with the property owner while in state custody. *Id.* at 579. The court held that Indiana could not take custody of property and retain income that the property earns. *Id.* at 582-83. While a state may charge a bookkeeping fee, which for small accounts may exceed the property's time value, it must pay the owner the property's earnings, whatever the amount. *Id.* The Seventh Circuit reasoned that a "state may not 'transform private property into public property without compensation' merely 'because it is held temporarily by the [state].'" *Id.* at 582 (quoting *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 164 (1980)).

Citing *Phillips v. Washington Legal Foundation*, 524 U.S. 156 (1998), the Seventh Circuit reasoned that "the Supreme Court reaffirmed its commitment to the 'interest follows principal' rule as a constitutionally relevant aspect of Takings Clause jurisprudence." *Id.* In accordance with that rule, the Seventh Circuit held that Indiana's retention and use of the earnings on unclaimed property was a taking requiring just compensation. A "state may not sidestep the Takings Clause by disavowing traditional property interests long recognized under state law." *Id.* at 582 (citing *Phillips).*

16

*Phillips* and its subsequent history are also instructive here.  The Supreme Court, in its ruling, reviewed Texas's Interest on Lawyers Trust Account (IOLTA) program. Under that program, any Texas attorney who received client funds that could not be invested profitably for the client's benefit was required to place those funds in a federally authorized Negotiable Order of Withdrawal (NOW) account.  *Phillips*, 524 U.S. at 161.   Interest earned on those IOLTA accounts was paid to the Texas Equal Access to Justice Foundation, a nonprofit corporation established by the Supreme Court of Texas. *Id*. at 162. Applying the legal maxim that "interest follows the principal," the Supreme Court held that "interest income generated by funds held in IOLTA accounts is the 'private property' of the owner of the principal" – the client. *Id*. at 172. On remand, the Fifth Circuit held that the Texas IOLTA program, which appropriated the IOLTA interest income, was a "taking" for purposes of the Fifth Amendment. *Washington Legal Found. v. Tex. Equal Access to Justice Found.*, 270 F.3d 180, 188 (5th Cir. 2001). The Fifth Circuit held that once a taking has occurred, just compensation is mandatory: "once a taking is found, the question becomes *what amount of, not whether*, just compensation is due."  *Id*. at 189 (emphasis added) (citing *Loretto v.*

*Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 444 (1982); *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, Cal.*, 482 U.S. 304, 314 (1987); *Monongahela Navigation Co. v. United States*, 148 U.S. 312, 336 (1893)).

Finally, in *Kolton v. Frerichs*, 869 F.3d 532 (7th Cir. 2017), the Seventh Circuit considered the Illinois unclaimed property statute which, like Indiana's and Florida's, was custodial and under which title of unclaimed property remained with property owners. *Id.* at 533. Like Florida's Act, the Illinois statute required that earnings on unclaimed property must be put to public use without payment of any compensation to the property owner for the state's use of that private property while in state custody. *Id.* The Seventh Circuit reasoned from Supreme Court precedent, including *Webb's Fabulous* and *Phillips*, that "the Takings Clause protects the time value of money just as much as it does money itself." *Id.* The Court of Appeals noted that its prior ruling in *Cerajeski* would have made the case "straightforward," but the district court dismissed the complaint for failure to exhaust remedies in Illinois courts. The Seventh Circuit reversed, finding that resort to state remedies would

have been futile.  *Id.* at 535.[2]  "This leaves Kolton with a federal forum and favorable federal precedent in *Cerajeski*."  *Id.*

Florida's Act likewise effects a taking of unclaimed property, like Plaintiff's, by mandating the comingling of unclaimed property funds with the State's school fund or other state funds used for public purposes. The Act requires that unclaimed property in the CFO's custody be put to State use for public purposes, thus appropriating the unclaimed private property for public use while in State custody.  As Defendant concedes, the Act does not require payment to property owners for the time the unclaimed property was in state custody. Under *Kolton*, *Cerajeski* and *Sogg*, this use of unclaimed property while in State custody constitutes a "taking" for which just compensation is required.

## C.  Defendant's Arguments Ignore that the Act Does Not Divest Owners of Title to their Property

Defendant erects a straw-man misstatement of Plaintiff's case by arguing that his mere taking custody of unclaimed property is not a taking.  Plaintiff, however, maintains that the State's *use of private*

---

[2] The Supreme Court has since eliminated the state-exhaustion requirement for Takings Clause claims. *Knick v. Twp. of Scott*, 139 S. Ct. 2162 (2019).

*property while in Defendant's custody is a taking*; Plaintiff does not contend that custody of unclaimed property alone constitutes a taking.

Because title to unclaimed property never transfers to the State under the Act, *Texaco Inc. v. Short*, 454 U.S. 516 (1982), does not support Defendant's position.  There, the Supreme Court considered an Indiana escheat law that declared "abandoned" mineral leases that had sat unused for 20 years and caused such leases to self-terminate such that the lessee's interest was extinguished. *Id.* at 518. The Supreme Court held that because the leaseholder had abandoned their mineral leases and the statute terminated them, they no longer owned any interest in them subject to a taking and the payment of just compensation. *Id.* Thus, unlike unclaimed property in Florida under the Act, the Indiana mineral rights escheat law extinguished the underlying property rights altogether.

In *Cerajeski*, discussed above, the Seventh Circuit distinguished *Texaco*, and the Indiana escheat statute it considered, in holding unconstitutional part of the separate Indiana Unclaimed Property Act (which is effectively identical to the Florida Act in issue here). 753 F. 3d

at 582-83. Under the unclaimed property act, the property owner retained ownership of her property in the state's custody. *Id.*

As the Ohio Supreme Court likewise explained, "*Texaco* … is irrelevant for present purposes because … nothing in the UFA indicates an intent to change the ownership of the unclaimed funds, whether due to the passage of time or any other reason. … What we are left with is the state's control over and use of the interest earned on the property of another." *Sogg*, 905 N.E. 2d at 451-52.

The State's cases fail to distinguish between situations where the property has been declared abandoned and escheated to the State and situations where the property has only been "presumed abandoned" (a "misleading term") and taken into custody under unclaimed property statutes like the Act. *See Cerajeski*, 735 F. 3d at 582-83.  Unless and until a state escheats property, title to the unclaimed property remains with the private owner who can obtain its return. *Id.* And interest or other return generated by that property constitutes the owner's private but unclaimed property as well. *Id.* "And so before [escheat], if the state takes either principal or interest, it must render just compensation to the owner …." *Id.* at 583.

Defendant's primary support against a taking is *McKenzie v. Florida Dept. of Financial Services*, Case No. 04 CA 755 (2nd Jud. Cir., Leon County Apr. 27, 2005) an unpersuasive, non-binding, unpublished 2005 opinion from a Florida trial court.  There, the trial court, indulged in the fiction that the plaintiffs, through "abandonment," had given up title to the property, and based on that, it held that the State did not "take" the plaintiffs' property for purposes of the Fifth Amendment by taking it into custody. Order at 5-7. The *McKenzie* Court, like Defendant, relies on the inapposite *Texaco* decision and never mentions the Supreme Court's decisions in *Phillips* and *Webb's Fabulous* or the rule that interest follows the principal.  *McKenzie* further relies (at 8) on a Seventh Circuit ERISA preemption decision authored by Judge Posner, *Commonwealth Edison Co. v. Vega*, 174 F.3d 870 (7th Cir. 1999), describing the effect of the Illinois unclaimed property act as "an interest-free loan to the state," that Judge Posner later addressed in *Cerejeski* when declaring the Illinois act effected a taking requiring just compensation.  735 F.3d at 580.  To be sure, the *McKenzie* Court (at 7) deems it self-evident that the State is able to freely use private property for public use as unclaimed property's custodian, because of the presumed abandoned nature of the

22

property.  It wrongly equates escheat statutes – where title passes to the state – with unclaimed property schemes.  (*Id.*)  *McKenzie* both relies on the false premise that owners have no title to unclaimed property and fails to account for subsequent legal developments.  It is unpersuasive here.

Moreover, "abandonment" under the Act does not justify free State use of private property without compensation to the property owner.  As Defendant concedes, Florida's Act provides that title to unclaimed property remains with the property owner, and that the CFO is merely custodian – the safekeeper – of the unclaimed property until claimed. While Defendant cites to the common law doctrine of *bona vacantia*, all common law doctrines, including *bona vacantia*, are subject to constitutional limitations. *Anderson Nat. Bank v. Luckett*, 321 U.S. 233, 240 (1944) (discussing limits of *bona vacantia*).  Regardless, that common law doctrine has not endured to today in the United States. *See Dep't of Fin. v. AT&T Inc.*, 253 A.3d 537, 542 n.2 (Del. 2021) (discussing evolution of *bona vacantia* in the United States).  A primary indicator here is that under the Act, unlike under *bona vacantia*, title to presumed abandoned

23

property remains with the property owner and does not transfer to the sovereign. *See id.* (noting that *bona vacantia* vested title in sovereign).

The State also cites the Third Circuit's non-precedential[3] opinion in *Simon v. Weissman*, 301 Fed. App'x 107 (3d Cir. 2008), but *Simon* too relied upon *Texaco* without appreciating the distinction between losing title through escheat and property taken into custody by the state as "presumed abandoned," the title to which remains with property owners. The Third Circuit erroneously failed to see why the Fifth Amendment might find that distinction meaningful. *Id.* at 86.

Plaintiff's cases explain that the constitutional distinction between owning title to property and not owning title to property is critical. In *Phillips*, as in *Sogg*, *Cerejeski* and *Kolton*, the dispositive constitutional fact was that the owners of the property in state custody retained title, and that the public use of the privately owned property thus required just compensation. By contrast, in *Texaco*, the Court held that the mineral leaseholders lost their property interests entirely under operation of state law, hence resulting in no Fifth Amendment taking.

---

[3] *See* 3rd Cir. IOP 5.3.

The other cases Defendant cites all either rely upon *Texaco* without recognizing the significance between having title and not having title to unclaimed property, or involve unclaimed property schemes where ownership over the property purported to transfer to the state under state law during the custodial period. *See Dani v. Miller,* 374 P.3d 779, 794 (Okla. 2016); *Turnacliff v. Westly*, 546 F.3d 1113, 1119 (9th Cir. 2008); *Morris v. Chiang,* 163 Cal. App. 4th 753, 756 (Cal. App. 2008); *Hooks v. Kennedy*, 961 So. 2d 425 (La. Ct. App. 2007); *Clark v. Strayhorn*, 184 S.W.3d 906, 914-15 (Tex. App.—Austin 2006). They focused on whether delivery of unclaimed property into state custody constituted a "taking" and concluded it did not because it was "abandoned."  In any event, none of these cases address whether the state's public use of privately owned unclaimed property while in state custody constitutes a taking for which just compensation is required, the question Plaintiff poses.

Much like the *McKenzie* Court, Defendant deems it self-evident that Florida may freely use private property for public use as "a collateral benefit" under the Act, without triggering an obligation under the Takings Clause to pay just compensation.  Mot at 21.  While claiming

25

there is no potential measure of just compensation, Defendant admits that Florida puts the private property to public use.  He admits that title to the property never passes to the State under the Act.  He admits that no just compensation is payable to the property owner under State law for the State's public use of the private property.  Defendant ignores that the Act requires far more than the passive receipt of unclaimed property.  As noted, the Act further requires the CFO to, and the CFO does in fact, actively employ the unclaimed property for public benefit until the private property is claimed.  That is State action, mandated by the Act.

Accordingly, by requiring the CFO to employ privately owned unclaimed property for the public benefit without requiring just compensation, the Act effects what the Supreme Court has repeatedly held is "the 'classic taking in which the government directly appropriates private property for its own use.'" *Horne*, 576 U.S. at 357.  Once a taking has occurred, the plain language of the Fifth Amendment requires just compensation, *Murr*, 137 S. Ct. at 1942, which the Act does not.  The measure of just compensation here can take many forms and is potentially informed by the Seventh Circuit's experience with the Indiana and Illinois statutes.  Plaintiff states an actionable claim,

26

regardless, by demonstrating the Fifth Amendment taking.  See *Knick*, 139 S.Ct. at 2170.

Accordingly, the Complaint states facts showing plausible claims that the Act violates the Takings Clause by mandating the public appropriation and use of unclaimed private property while in state custody without just compensation to property owners.

## III.   PLAINTIFF HAS STANDING AND RIPE CLAIMS

Defendant argues that Plaintiff has failed to show a case or controversy invoking this Court's Article III jurisdiction.  As recent Supreme Court precedent makes clear, Plaintiff's claim arose when the State put to public use her unclaimed private property without providing for payment of just compensation in the Act.  That public use of her private property without just compensation continues. The State's use of her private property was caused by Act-mandated actions of the CFO. The relief sought, a declaration in Plaintiff's favor and an injunction preventing the State's continued use of Plaintiff's unclaimed private property without just compensation, would fully redress Plaintiff's claims.   Plaintiff has established injury-in-fact, causation, and

redressable harm, and thus has standing to properly invoke this Court's Article III jurisdiction.

### A.      Injury-in-Fact.

Defendant's attacks on Plaintiff's standing ignore recent Supreme Court precedent.  "[A] property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it." *Knick*, 139 S. Ct. at 2170.  When a "government takes private property without paying for it, that government has violated the Fifth Amendment—just as the Takings Clause says— without regard to subsequent state court proceedings. And the property owner may sue the government at that time in federal court for the 'deprivation' of a right 'secured by the Constitution.'" *Id*.

The Supreme Court has explained that "once there is a 'taking,' compensation *must* be awarded because '[a]s soon as private property has been taken" the owner "has *already* suffered a constitutional violation.'"  *Id*. That Plaintiff will not make a claim to recover her unclaimed property until after this Court declares whether the State must also pay her just compensation for its appropriation of her property does not change the fact that she has already suffered an injury from the

appropriation. *See Webb's Fabulous*, 449 U.S. at 161-62 (creditors which had not yet made claim to fund held by the county had standing to challenge law appropriating interest earned by the fund). Accordingly, the State is simply wrong in claiming that Plaintiff has not suffered an actionable injury.

## B.   Causation

The State mistakenly asserts Plaintiff has failed to tie her injury to state action.  Defendant ignores that the Act requires far more than his passive receipt and accounting of unclaimed property.  As noted, the Act further requires the CFO to actively employ the unclaimed property for public benefit until the private property is claimed.  That is State action, mandated by the Act, and is the essence of the unconstitutional taking here. Plaintiff has plainly established causation.

Defendant argues its action caused Plaintiff no injury because the unclaimed property was not in an interest-bearing account, such that if it had never taken the property into custody, she would never have made any interest. That misses the point: the Act requires all unclaimed property – whether originally in an interest-bearing account or not – to be used for public benefit while in Defendant's custody, without compensating the property owner for that use. The right to just

compensation "does not depend on what [the property] had been earning in the owner's hand." *Goldberg v. Frerichs*, 912 F. 3d 1009, 1011 (7th Cir. 2019).

### C.    Injury Redressable Through Judgment

While *Knick* makes clear Plaintiff's standing here, for completeness of retort, Plaintiff's harm would be fully redressed through the relief sought.  Plaintiff seeks a declaration in her favor on her Takings Clause claim and a determination of the measure of just compensation, as well as an injunction preventing the State from using private property for public use under the Act without just compensation to the property owner, in accordance with the declaration sought.  With that relief, Plaintiff can be certain that, when she claims her property from Defendant, the CFO will provide full, just compensation for the public use of her property while in the State's custody, as the Fifth Amendment requires.

Moreover, *Knick* makes clear that the property owner need not seek redress through State procedures before seeking relief in federal court. *Knick*, 139 S. Ct. at 2162 (overruling state-exhaustion requirement). Thus, that Plaintiff has not yet claimed her property is irrelevant here.

## IV.   SOVEREIGN IMMUNITY DOES NOT BAR PLAINTIFF'S CLAIMS

The State asserts that Plaintiff's claims are barred by the doctrine of sovereign immunity and inaccurately classifies the relief Plaintiff seeks as retrospective and a masked claim for monetary damages. The relief Plaintiff seeks is proper and is not barred by sovereign immunity.

### A.   The *Ex Parte Young* Exception Applies

Generally, states enjoy immunity from suits against them unless the state has consented expressly or by implication to the suit or Congress has unequivocally abrogated the state's immunity from suit. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–99 (1984). However, under the legal "fiction" created by the United States Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908), "a suit alleging a violation of the federal constitution against a state official in his official capacity for injunctive relief on a prospective basis is not a suit against the state, and, accordingly, does not violate the Eleventh Amendment." *Support Working Animals, Inc. v. DeSantis*, 457 F. Supp. 3d 1193, 1207 (N.D. Fla. 2020) (citations omitted).

This suit directly implicates the *Ex parte Young* "fiction." The State nevertheless claims that the relief sought by Plaintiffs—a declaration

and injunction requiring payment of just compensation pursuant to the Takings Clause in the future—is retrospective and, thus, in contravention of the *Ex parte Young* exception and impermissible under the Eleventh Amendment.   The Complaint and recent caselaw demonstrate that Plaintiff seeks prospective relief that fits within the confines of *Ex parte Young*.

"As in most areas of the law, the difference between the type of relief barred by the Eleventh Amendment and that permitted under *Ex parte Young* will not in many instances be that between day and night." *Edelman v. Jordan*, 415 U.S. 651, 667 (1974).  The Court must examine the practical effect of the relief sought.  *Id*. at 668.  While claims resulting in a money judgment payable out of state funds typically would be barred by sovereign immunity, that does not mean that proper prospective relief cannot have a fiscal impact on a state.  *Id*. at 666–67.  To the contrary, a state can suffer fiscal consequences when the relief sought obligates the state to comply with federal law *in the future*. *Id*. at 667–68.  "Such an ancillary effect on the state treasury is a permissible and often an inevitable consequence of the principle announced in *Ex parte Young*." *Id*. at 668.

The United States District Court for the District of Wisconsin recently confronted the very issue that the parties here face—whether just compensation sought by the plaintiff for the state's unlawful retention of interest on unclaimed property in state custody is considered prospective relief and, therefore, not barred by the Eleventh Amendment. In *Siebers v. Barca*, plaintiffs who had not received the return of their unclaimed property challenged the provisions of the Wisconsin Unclaimed Property Act, contending that the state unlawfully retained interest on unclaimed property in violation of the Takings Clause. 2022 WL 2438605, at *1 (W.D. Wis. Jul. 5, 2022).

The Court found that the injunctive relief sought by those plaintiffs was prospective:

> But plaintiffs also ask the court for an injunction that prohibits defendants from refusing to pay all earned interest on plaintiffs' unclaimed property moving forward, and an injunction that requires the state to hold interest earned on unclaimed property in a separate account. That is prospective relief.

> The court concludes that under *Ex Parte Young*, plaintiffs may seek injunctive and declaratory relief aimed at securing state-earned-interest on claims that have not yet been paid by the state. If plaintiffs succeed on the merits of their claim later in the case, this relief would require the state to settle claims in compliance with federal law in the future.

33

*Id.* at *7 (citing *Cerajeski*, 735 F.3d at 579 (plaintiff awarded declaration that she was entitled to interest on her unclaimed property to use when she later filed a claim for the return of her property)).

Thus, the Eleventh Amendment is no bar to Plaintiff's claims.

## B.   Florida Has No Sovereign Immunity for Takings Claims

Defendant characterizes Plaintiff's relief sought as retrospective to the extent Plaintiff seeks just compensation measured from a time before a judicial finding of a taking, and thus outside the prospective-only scope of *Ex parte Young*'s "fiction."  Plaintiff properly seeks class-wide relief from the filing of the Complaint, which to Plaintiff, who has yet to make a claim to the State, would be wholly prospective.  In all events, however, victims of state takings have actionable claims in state and federal court for just compensation, and sovereign immunity is no bar to those claims, particularly for Florida.

First, the Florida Supreme Court has held that Florida is not immune from suit raising constitutional violations:

> Sovereign immunity does not exempt the State from a challenge based on violation of the federal or state constitutions, because any other rule self-evidently would make constitutional law subservient to the State's will.

> Moreover, neither the common law nor a state statute can supersede a provision of the federal or state constitutions.

*Dep't of Revenue v. Kuhnlein*, 646 So. 2d 717, 721 (Fla. 1994), as clarified (Nov. 30, 1994).  This authoritative statement of Florida substantive law binds this Court.  *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

Second, the "Supreme Court recognizes that the Takings Clause of the Fifth Amendment is 'self-executing' without statutory recognition, so states must provide a specific remedy for takings in their own courts." *In re Venoco LLC*, 998 F.3d 94, 110 (3d Cir.), *cert. denied sub nom. California State Lands Comm'n v. Davis*, 142 S. Ct. 231 (2021).  The Fifth Amendment's self-executing character essentially withdraws governmental immunity from suit, as the Supreme Court has repeatedly recognized over the years.

The Supreme Court, as noted, has recognized that the text of the Takings Clause plainly spells out a claim for just compensation against the government.  In *United States v. Clarke*, 445 U.S. 253, 257 (1998), the Court ruled that a landowner's right to make a claim for inverse condemnation results from the "self-executing character of the constitutional provision with respect to compensation."

Likewise, in *First English*, 482 U.S. 304 (1987), Chief Justice Rehnquist explained that the Court has long understood the Constitution mandates a remedy for takings:

> [T]he remedy did not qualify as a right.  It rested upon the Fifth Amendment.  Statutory recognition was not necessary.  A promise to pay was not necessary.  Such a promise was implied because of the duty to pay imposed by the Amendment. *The suits were founded upon the Constitution of the United States.*

*Id.* at 315 (quoting *Jacobs v. United States*, 290 U.S. 13, 16 (1933)) (emphasis in *First English*).  The Court in 2019 reduced this self-executing remedy concept to a holding, in *Knick*: "In sum, because a taking without compensation violates the self-executing Fifth Amendment at the time of the taking, the property owner can bring a federal suit at that time."  139 S. Ct. at 2172.

The self-executing Fifth Amendment's Takings Clause described by the Court in *Knick*, *First English*, and *Jacobs* is incompatible with sovereign immunity against suits seeking just compensation under the Fifth Amendment.  The requirement of providing a takings remedy in state court necessarily indicates the unavailability of sovereign immunity for takings claims.

36

In a taking situation, the state necessarily, and impliedly, waives sovereign immunity, or otherwise the state could simply avoid its obligation to pay just compensation by wielding sovereign immunity as an impenetrable shield to avoid suffering that constitutionally mandated remedy. The constitutional plan requires an implicit waiver to give meaning to the self-executing remedy of just compensation. *See Torres v. Texas Dept. of Public Safety*, 142 S.Ct. 2455 (2022) (finding implicit waiver in the Plan of the Convention).

Moreover, because the legal claim for just compensation arises immediately upon the taking, *Knick*, 139 S. Ct. at 2171, it would likewise make no sense to render any available relief for a taking violation wholly contingent on a judgment or judicial finding of liability. Under *Knick*'s self-executing framework, the measure of just compensation must begin at the time of the taking, and not sometime later.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that Defendant's motion to dismiss should be denied.

Dated: September 29, 2022

JEEVES LAW GROUP, P.A.

OF COUNSEL:

SMITH, KATZENSTEIN & JENKINS LLP
Michael C. Wagner
(pro hac vice forthcoming)
Julie M. O'Dell
(pro hac vice forthcoming)
1000 N. West Street, Suite 1501
Wilmington, Delaware 19801
(302) 652-8400
mcw@skjlaw.com
jmo@skjlaw.com

THE LAW OFFICE OF ARTHUR SUSMAN
Arthur Susman (*pro hac vice* forthcoming)
1540 N. Lake Shore Drive
Chicago, Illinois 60610
(847) 800-2351

*/s/Kyle W. Woodford*
Kyle W. Woodford, FBN: 1033490
Scott R. Jeeves, FBN: 0905630
2132 Central Avenue
St. Petersburg, Florida 33712
Telephone: (727) 894-2929
sjeeves@jeeveslawgroup.com
kwoodford@jeeveslawgroup.com
khill@jeeveslawgroup.com

JEEVES MANDEL LAW GROUP, P.C.
Roger L. Mandel
(*pro hac vice* forthcoming)
2833 Crockett St
Suite 135
Fort Worth, TX 76107
Telephone: 214-253-8300
rmandel@jeevesmandellawgroup.com

CRAIG E. ROTHBURD, P.A.
Craig E. Rothburd, FBN: 0049182
320 W. Kennedy Blvd., #700
Tampa, Florida 33606
Telephone: (813) 251-8800
Fax: (813) 251-5042
craig@rothburdpa.com
maria@rothburdpa.com

*Attorneys for Plaintiffs*

38

## CERTIFICATE OF WORD COUNT

I HEREBY CERTIFY that this memorandum complies with Local Rule 7.1(F) because it contains 7,293 words, as calculated using Microsoft Word and excluding the case style, signature block and certificate of service.

*/s/Kyle W. Woodford*
Kyle W. Woodford