## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

| | |
|---|---|
| ALIEDA MARON, and LAWRENCE MARON, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> JIMMY T. PATRONIS, JR., in his official capacity as the Chief Financial Officer of the State of Florida, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) <br><br> CIVIL ACTION <br><br> No.4:22-CV-00255-RH-MAF |

## **FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs Alieda Maron and Lawrence Maron ("Plaintiffs"), individually and on behalf of all others similarly situated, file this First Amended Class Action Complaint and Demand for Jury Trial (the "Complaint") against Defendant Jimmy T. Patronis, Jr., Chief Financial Officer of the State of Florida in his official capacity (the "State" or "Defendant"), and state as follows:

1

## INTRODUCTION

1.     Plaintiffs     bring     this     action     challenging     the constitutionality under the Fifth and Fourteenth Amendments to the United States Constitution and Article X, Section 6 of the Florida Constitution of Section 717.124(4)(a) of the Florida Disposition of Unclaimed Property Act, Fla. Stat. Chapter 717 (the "Act"). That section requires the State to take for public use, without payment of just compensation to its owners, private property that the State classifies as "presumed unclaimed" pursuant to other provisions of the Act. This Complaint seeks declaratory and further necessary or proper relief, including an injunction, under 42 U.S.C. § 1983, 22 U.S.C. §§ 2201 & 2202, and the United States and Florida Constitutions on behalf of all current owners of unclaimed property held by the State in the form of money who will reclaim their property in the future.

2.     The Act applies to personal property that is held by a third party (the "holder"), for example, a bank, insurance company, corporation, or public utility. Under the Act, such property is "presumed unclaimed" if the owner, as defined in the Act, has not

communicated in writing with the holder concerning the property or has not otherwise given an indication of interest in the property within certain time limits provided in the Act. Property that is "presumed unclaimed" must be delivered to the State's custody.

3.     After it takes non-cash property, the State must promptly sell it to turn it into cash. The owner of dividend-bearing securities is entitled to recover any dividends that accrue prior to the State's sale of the securities.

4.     The Takings Clause of the Fifth Amendment to the United States Constitution (the "Fifth Amendment") prohibits the government from using private property for public purposes without compensation to the property owner as follows: "nor shall private property be taken for public use, without just compensation." The Fifth Amendment is applied to the States by the Due Process Clause of the Fourteenth Amendment to the United States Constitution (the "Fourteenth Amendment").

5.     The Takings Clause of Article X, Section 6(a) of the Florida Constitution ("Article X, Section 6(a)") contains a similar proscription: "No private property shall be taken except for a public purpose and

with full compensation therefor paid to each owner or secured by deposit in the registry of the court and available to the owner."

6.    Nevertheless, under the Act, "presumed unclaimed" cash, cash proceeds from the sale of "presumed unclaimed" non-cash, and any earnings on such property are all used to fund State programs or operations. While an owner who files a valid claim may reclaim property from the State, Section 717.124(4)(a) of the Act provides that an owner may recover only the cash turned over to the State by the holder (or the cash proceeds from the sale of non-cash property). Put another way, Fla. Stat. § 717.124(4)(a) prohibits the State from paying any interest reflecting the time value or other value of an owner's property.

7.    Accordingly, the Act effectively provides the State with an interest-free loan of unclaimed private property funds that the Act directs to be co-mingled with the State's School Fund while in the State's custody. The State otherwise pays market rates to borrow money.

8.    The State currently holds more than $3.5 billion in unclaimed property funds, and it uses that unclaimed property freely

4

to fund State obligations. The State paid out $358 million on unclaimed property claims in 2021. Accordingly, Plaintiffs and tens of thousands of Florida citizens who will claim their presumed abandoned property in the future will have their Constitutional rights violated when the State refuses to pay them just compensation for the public use of their property.

9.   The Court of Appeals for the Seventh Circuit in *Kolton v. Frerichs,* 869 F.3d 532 (7th Cir. 2017) considered the Illinois unclaimed property act, which, like Florida's, allowed the state to use unclaimed property without paying compensation to the property's owners for its use. It held that act violated the Fifth Amendment's Takings Clause, made applicable to Illinois and the other states through the Due Process Clause of the Fourteenth Amendment because it denied property owners just compensation for the benefit of their property's use while it was in state custody. The Seventh Circuit also held that the state's obligation to pay just compensation for the public use of unclaimed private property does not depend on whether the property was earning interest before it was delivered to the state.

10.    In this Complaint, Plaintiffs seek a declaration that when the State takes and uses unclaimed property for public purposes and refuses to pay just compensation for its use pursuant to Section 717.124(4)(a) of the Act, it commits a taking of Plaintiffs and the Class's property in violation of the Fifth Amendment and Article X, Section 6 and that the State is, therefore, required to pay Plaintiffs and the Class for the time value of their property or other value of its use. Necessarily, therefore, Plaintiffs seek a declaration that Section 717.124(4)(a) of the Act is unconstitutional. Plaintiffs also seek further necessary and proper relief to implement that declaration, including, but not limited to, an injunction requiring payment of just compensation for the time or other value of their property to Plaintiff and the Class when their property is returned in the future.

## **PARTIES**

11.    Plaintiffs Alieda Maron and Lawrence Maron (wife and husband) are and have been at all relevant times citizens and residents of Saint Petersburg, Florida. Plaintiffs are an "owner" of property, as defined in Fla. Stat. § 717.101, that is currently held in custody pursuant to the Act by the State.

6

12.    Defendant Jimmy T. Patronis, Jr., is the Chief Financial Officer of the State of Florida, the head of State's Department of Financial Services. In that position, pursuant to the Act, Defendant, is and has been in charge of supervising and administering the Act. Plaintiffs sue Defendant Patronis in his official capacity. In that capacity, he resides in this District and is subject to suit in this District.

### JURISDICTION AND VENUE

13.    The claims in this Complaint arise under the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. As such, jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343 and 28 U.S.C. § 1367(a).

14.    Venue is proper in this District because Defendant is deemed to reside in and is subject to suit in this District, and because a substantial portion of the events that underlie the claims asserted here occurred in this District.

# STATEMENT OF FACTS

## A. The Act and Its Operation

15.    The Act contains many provisions modeled after a Uniform Unclaimed Property Act promulgated by the Uniform Law Commission. The Act, as alleged above, provides that private property is "presumed unclaimed" if the owner or apparent owner has not communicated in writing with the holder concerning the property or has not otherwise given an indication of interest in the property for a certain period of time. Fla. Stat. § 717.102. The purpose of the Act is twofold: first, to reunite owners with their property, and second, to allow the State, rather than the holder, to use the property before it is reunited with its owner without paying any compensation for its use.

16.    Once a holder determines property in its possession is "presumed unclaimed" within the meaning of the Act, the holder is required to attempt to notify the owner and, if the property is not claimed by the owner, to pay or deliver the property into the custody of the State. Fla. Stat. § 717.119(1). If the property is not cash, securities or negotiable instruments, the State "shall" sell the

property within a reasonable time either to the highest bidder at a public sale or, if the property is publicly traded securities, at prevailing market prices. Fla. Stat. § 717.122(1). The unclaimed property and proceeds from the sale of unclaimed property are to be held in custody for the owner, who can reclaim the property from the State at any time, but without payment of any compensation for the State's use of that property during its time in the State's custody. Fla. Stat § 717.124(4)(a).

17.    The Act directs the State to deposit all funds received pursuant to the Act, including funds from the liquidation of non-cash property, in the State's School Fund, except for mandatory deposits to an "Unclaimed Property Trust Fund" containing a sum "not exceeding $15 million" from which the State shall pay owner claims and the State's costs incurred "in administering and enforcing" the Act.  Fla. Stat § 717.123(1).  When claims plus administrative expenses exceed the sum in the Unclaimed Property Trust Fund, funds are transferred from the State's School Fund to that trust fund for those purposes. *Id.*

18.   The State acknowledges that it holds over $3.5 billion of unclaimed property and that it paid out $358 million in unclaimed property claims in 2021. The State receives, as custodian under the Act, more than $100 million in new unclaimed property every year.

19.   Thus, under the Act, at least $85 million in unclaimed property is transferred to the custody of the State pursuant to the Act and deposited into the State's School Fund every year. There it earns interest, dividends, or other accruals and/or is held in interest-bearing accounts or other investment instruments. By law, such interest, dividends, accruals, and other investment returns must inure to the sole benefit of the State's School Fund.

20.   Unlike an escheat statute, in which actual title to abandoned property may eventually vest in the State after certain due process procedures are followed, the Act is purely custodial in nature, and title to the presumed abandoned property is never transferred from the owner to the State. Thus, title and ownership always remain with the original owner of the property.

21.   The State does not compensate an owner of unclaimed property for lost interest, dividends, or other earnings or accruals on

the property after deposit with the State or the loss of the beneficial use of the property or its time value while it is in State custody. So, the State does not pay just compensation to any owner for the State's use of their private unclaimed property while it is in State custody. Both the State's "State Treasure Hunt" website and Fla. Stat. § 717.124(4)(a) make this clear: "[I]f a claim is determined in favor of the claimant, the State shall deliver or pay over to the claimant the property or the amount the department actually received or the proceeds if it has been sold by the department …." Fla. Stat. § 717.124(4)(a).

22.    In *Kolton v. Frerichs*, 869 F.3d 532 (7th Cir. 2017), the U.S. Court of Appeals for the Seventh Circuit considered a Fifth Amendment challenge to Illinois' unclaimed property statute, which like the State's, paid no compensation to property owners for the state's use of unclaimed property while in state custody.  The Court reasoned:

> The Supreme Court has held that the Takings Clause protects the time value of money just as much as it does money itself. *Brown v. Legal Foundation of Washington*, 538 U.S. 216,235, 123 S. Ct. 1406, 155 L. Ed. 2d 376 (2003); *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 165-72, 118 S. Ct. 1925, 141 L. Ed. 2d 174 (1998); *Webb's*

*Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 162-65, 101 S. Ct. 446, 66 L.Ed. 2d 358 (1980). In *Cerajeski v. Zoeller*, 735 F.3d 577 (7th Cir. 2013), we applied these precedents to an Indiana statute like the Illinois statute in this case. We held that a state may not take custody of property and retain income that the property earns. A state may charge a bookkeeping fee, which for small accounts may exceed the property's time value, but must allow the owner the benefit of the property's earnings, however large or small they turn out to be.

*Id.* at 578-80.

23.     The essential features of the Illinois unclaimed property act are identical to the State's.  The Illinois act allowed for no payment to property owners for the state's use of the owner's property while in the state's custody.  Here, too, the Act does not allow for the payment of compensation to property owners for the State's use of unclaimed property for public purposes while the property is in the State's custody pursuant to the Act.  Rather, State law requires that earnings on unclaimed property while in State custody inure to the sole benefit of the State's School Fund.

**B.     *Plaintiffs' Property.***

24.     According to the State's online records, it holds the Marons' property in custody. The State describes that property as "premium refunds on individual," and it is in the amount of $26.24.

25.     While the State has held the Marons' property in custody, pursuant to the Act, it has used the property for public purposes, including by investing the property and earning interest, and otherwise using it to fund the State's operations and programs, thereby relieving the State from borrowing funds at market rates to satisfy its obligations.

26.     Under the Act, when Plaintiffs claims their property, as they intend to do, the State will pay Plaintiffs a cash payment equal to the amount of Plaintiffs' unclaimed property the State received, but it will not pay them just (or any) compensation for the State's use of that property during the time the State has had custody of the property.

## CLASS ACTION ALLEGATIONS

27.     Plaintiffs bring this action on their own behalves and as a class action pursuant to Rule 23(a) and Rule 23(b)(1)(A) & (b)(2) of the Federal Rules of Civil Procedure, seeking declaratory and prospective injunctive relief on behalf of the following class (the "Class"):

> All persons or entities (including their heirs, assignees, legal representatives, guardians, administrators, and successors in interest) who are owners of unclaimed property being held in custody by the Chief Financial

Officer of the State of Florida in the form of money under the State Disposition of Unclaimed Property Act, Fla. Stat. Ch. 717, as of the date of the complaint or who become owners of unclaimed property so held during the pendency of this litigation, and who will in the future reclaim their property from the State.

28.   The members of the Class are so numerous that joinder of all members is impracticable. Currently the State holds more than $3.2 billion in unclaimed property in custody, with hundreds of millions of dollars of additional unclaimed property flowing to the State annually. Given that most of the property amounts held are small, the number of persons or entities who own property presumed abandoned and held in custody by the State under the Act necessarily must be in the hundreds of thousands. Indeed, given that the State paid out $358 million in unclaimed property claims in 2021, it is reasonable to expect hundreds of thousands of people to make claims for the return of their property in the next few year alone. For example, if the average amount per person of property reclaimed is $1,000 (and it is likely much less than that), that would result in 358,000 Class members in just one year.

29.   Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs' property, like that of the other Class members,

is currently being held in custody under the Act by the State. Like all the other members of the Class, absent relief from this Court, when Plaintiffs claim their property from the State, they will not receive just (or any) compensation for its use by the State. Therefore, Plaintiffs suffer from the same deprivation of their Constitutional rights as each Class member they seek to represent, and they seek to recover for that deprivation under the same legal theories as the rest of the Class.

30.    Plaintiffs will fairly and adequately protect the interests of the Class because they have no conflicts of interest with the other members of the Class, are ready, willing, and able to fulfill their responsibilities as class representatives, and they have retained counsel competent and experienced in class action litigation to represent themselves and the Class.

31.    There are questions of law and fact common to the Class, including, but not limited to, the following:

      a.    whether the State's use of Class members' property for public purposes to fund its operations, and to earn and retain interest, dividends and other earnings or

accruals on that property, constitutes a taking for which

just compensation is due under the United States and

Florida Constitutions;

b.    whether the State will refuse to pay just compensation

to Class members in the future when they reclaim their

property; and

c.    the appropriate declaratory and further necessary or

proper injunctive or other relief the Court should

award to Class members, including the measure of

the time value or other value of their property the

Court should require the State to pay them.

32.   The State has acted and refused to act, and will continue

to do so in the future, on grounds that apply generally to the Class

such that declaratory relief is appropriate to the Class as a whole,

making certification pursuant to Rule 23(b)(2) appropriate.

33.   The State must treat all Florida citizens equally in its

handling of their unclaimed property. Accordingly, certification

pursuant to Rule 23(b)(1)(A) is also appropriate, given that

prosecution of separate actions by individual Class members would

16

create a risk of inconsistent or varying adjudications with respect to individual Class members that could establish incompatible standards of conduct for the State.

## COUNT I
## DECLARATORY AND FURTHER NECESSARY OR PROPER RELIEF ON BEHALF OF PLAINTIFFS AND THE CLASS PURSUANT TO 28 USC § 1983 AND 28 U.S.C §§ 2201 & 2202 BASED ON UNCONSTITUTIONALITY UNDER THE FIFTH AMENDMENT

34.    Plaintiffs reallege paragraphs 1 through 33 as though fully set forth herein.

35.    Section 717.124(4)(a) of the Act violates the Fifth Amendment as applied to the State by the Fourteenth Amendment because it requires the State to use for public purposes unclaimed property transferred to its custody without payment of just (or any) compensation to property owners for that use when they reclaim their property. Accordingly, an actual controversy exists between Plaintiffs and Class members and the State as to whether the State must, pursuant to the Constitution, pay them, when they reclaim their property, just compensation for the time value or other value of their property while it is in the State's custody and being used by the State for public purposes.

36.    The State, under color of the Act, has already and will continue in the future to violate 42 U.S.C. § 1983 by subjecting Plaintiffs and Class members to the deprivation of their rights under the Fifth and Fourteenth Amendments to just compensation for the use of their property for public purposes.

37.    Plaintiffs and the Class are, accordingly, pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201, entitled to a declaration that Section 717.124(4)(a) of the Act prohibiting the payment of the time or other value of their property to Plaintiffs and the Class violates the Fifth Amendment and Section 1983 and, thus, that the State must pay them for the time or other value of their property while it was in the State's custody and being used for public purposes. The time or other value the Court declares the State must pay when it pays claims for unclaimed property could be measured by the average rate earned by funds in the School Fund during the time the property was in the State's custody or the average rate at which the State borrowed money during the time the property was in the State's custody or the rate then payable as prejudgment interest as set by Defendant pursuant to Fla. Stat. § 55.03(1) or such other rate the Court finds appropriate.

38.    Pursuant to Fed. R. Civ. P. 57, Plaintiffs and the Class request the Court to order a speedy hearing on their request for a declaratory judgment following class certification. As to any issue not decided by the Court as a matter of law, Plaintiffs and the Class request a jury trial.

39.    After entry of the declaratory judgment, pursuant to 28 U.S. § 2202, Plaintiffs and the Class will seek such further necessary or proper relief against the State as the Court finds appropriate, including, but not limited to, an injunction requiring the State to pay the time or other value of their lost property to Class members who reclaim their property in the future. Because the Eleventh Amendment prohibits Plaintiffs and the Class from pursuing damages from the State in this Court, they will suffer irreparable damage and will have no adequate remedy at law if the State is not compelled to refrain from further violations of the Fifth Amendment and to pay Plaintiffs and the Class for the time value of their property while in State custody and being used for public purposes when they reclaim that property.

**COUNT II**
**DECLARATORY AND FURTHER NECESSARY OR**
**PROPER RELIEF ON BEHALF OF PLAINTIFF**
**AND THE CLASS PURSUANT TO FLORIDA**
**CONSTITUTION ARTICLE X, SECTION 6(a) AND**
**28 U.S.C §§ 2201 & 2202 BASED ON**
**UNCONSTITUTIONALITY UNDER ARTICLE X,**
**SECTION 6(a)**

40.　Plaintiffs realleges paragraphs 1 through 33 as though fully set forth herein.

41.　Section 717.124(4)(a) of the Act violates Article X, Section 6(a) because it requires the State to use for public purposes unclaimed property transferred to its custody without payment to property owners of just (or any) compensation for that use when they reclaim their property.  Accordingly, an actual controversy exists between Plaintiffs and Class members and the State as to whether the State must, pursuant to the Florida Constitution, pay them, when they reclaim their property, just compensation for the time or other value of their property while it was in the State's custody and being used by the State for public purposes.

42.　Plaintiffs and the Class are, accordingly, pursuant to Article X, Section 6(a) and 28 U.S.C. § 2201, entitled to a declaration that Section 717.124(4)(a) of the Act prohibiting the payment of the time

value of their property to Plaintiffs and the Class violates Article X, Section 6(a) and, thus, that the State must pay them for the time or other value of their property while it was in the State's custody and being used for public purposes. The time or other value the Court declares the State must pay when it pays claims for unclaimed property could be measured by the average rate earned by funds in the School Fund during the time the property was in the State's custody or the average rate at which the State borrowed money during the time the property was in the State's custody or the rate then payable as prejudgment interest as set by Defendant pursuant to Fla. Stat. § 55.03(1) or such other rate the Court finds appropriate.

43.     Pursuant to Fed. R. Civ. P. 57, Plaintiffs and the Class request the Court to order a speedy hearing on their request for a declaratory judgment following class certification. As to any issue not decided by the Court as a matter of law, Plaintiffs and the Class request a jury trial.

44.     After entry of the declaratory judgment, pursuant to 28 U.S. § 2202, Plaintiffs and the Class seek such further necessary or proper relief against the State as the Court finds appropriate,

including, but not limited to, an injunction requiring the State to refrain from further violations of the Florida Constitution and to pay Plaintiffs and the Class for the time or other value of their property while in State custody and being used for public purposes when they reclaim their property in the future.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiffs Alieda Maron and Lawrence request the Court to grant them and the Class relief against the State as follows:

A.     An order certifying this action to proceed as a class action pursuant to Rule 23(a) and 23(b)(1)(A) and/or 23(b)(2) of the Federal Rules of Civil Procedure on behalf of the Class defined above, appointing Plaintiffs as Class representatives, and appointing their counsel as Class Counsel.

B.     A judgment declaring that Section 717.124(4)(a) of the Act prohibiting the payment of the time or other value of their property to Plaintiffs and the Class violates the Fifth Amendment and Section 1983 and, thus, that when they reclaim their property, the State must pay

them for the time or other value of their property while it was in the State's custody and being used for public purposes.

C.    A judgment declaring that Section 717.124(4)(a) of the Act prohibiting the payment of the time or other value of their property to Plaintiffs and the Class violates Article X, Section 6(a) of the Florida Constitution and, thus, that when they reclaim their property, the State must pay them for the time or other value of their property while it was in the State's custody and being used for public purposes.

D.    A judgment declaring the measure of the time or other value of their property that the State must pay to Plaintiffs and the Class when they reclaim their property.

E.    A judgement awarding Plaintiffs and the Class such further necessary or proper relief against the State as the Court finds appropriate, including, but not limited to, an injunction requiring the State to pay the time or other value of their property to Plaintiffs and the Class when they reclaim their property in the future.

F.    A judgment awarding Plaintiffs their attorneys' fees and reimbursement of their expenses pursuant to 42 U.S.C. § 1988 and/or applicable principles of equity; and

J.      A judgment awarding Plaintiffs and the Class such other and

further relief to which they justly be entitled.

DATED: March 14, 2023.        /s/*Scott R. Jeeves*
                              **JEEVES LAW GROUP, P.A.**
                              Scott R. Jeeves, FBN: 0905630
                              Kyle W. Woodford, FBN: 1033490
                              2132 Central Avenue
                              St. Petersburg, Florida 33712
                              Telephone: (727) 894-2929
                              sjeeves@jeeveslawgroup.com
                              kwoodford@jeeveslawgroup.com
                              khill@jeeveslawgroup.com

                              **JEEVES MANDEL LAW GROUP, P.C.**
                              Roger L. Mandel
                              (admitted *pro hac vice* )
                              2833 Crockett St
                              Suite 135
                              Fort Worth, TX 76107
                              Telephone: 214-253-8300
                              rmandel@jeevesmandellawgroup.com

                              **CRAIG E. ROTHBURD, P.A.**
                              Craig E. Rothburd, FBN: 0049182
                              320 W. Kennedy Blvd., #700
                              Tampa, Florida 33606
                              Telephone: (813) 251-8800
                              Fax: (813) 251-5042
                              craig@rothburdpa.com
                              maria@rothburdpa.com

                              **SMITH, KATZENSTEIN & JENKINS, LLP**
                              Julie M. O'Dell (*pro hac vice* forthcoming)
                              Kelly Green (*pro hac vice* forthcoming)

1000 N. West Street, Suite 1501
Wilmington, Delaware 19801
(302) 652-8400
kag@skjlaw.com
jmo@skjlaw.com

**THE LAW OFFICE OF ARTHUR SUSMAN**
Arthur Susman (*pro hac vice* forthcoming)
1540 N. Lake Shore Drive
Chicago, Illinois 60610
(847) 800-2351
arthur@susman-law.com

*Attorneys for Plaintiff and the Class*