IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ALIEDA MARON, and
LAWRENCE MARON,

      Plaintiffs,

v.                                  CASE NO. 4:22cv255-RH-MAF

JIMMY T. PATRONIS, JR.,

      Defendant.

_____/

## ORDER OF DISMISSAL

Like most states, the State of Florida takes custody of property that is unclaimed for a sufficient period. Much of the unclaimed property is money, and the State sells or otherwise converts the rest to money. The State retains some of the money, sometimes accruing interest, but uses the remainder, mostly for expenses incurred to operate the public schools.

Florida sets no deadline for an owner to reclaim property. But the owner can recover only principal—not interest or other compensation for the State's retention or use of the property prior to its return. This case presents a constitutional challenge to the State's failure to pay interest or other compensation.

## I. Background: The Florida Disposition of Unclaimed Property Act

The Florida Disposition of Unclaimed Property Act ("the Act") is codified in Florida Statutes chapter 717. The Department of Financial Services administers the Act. *See* Fla. Stat. §§ 717.101(7), 717.123, 717.124. The Act defines a "holder" as a person or entity—for example, a bank—in possession of property belonging to another. *Id*. § 717.101(12). An "owner" is a person having a legal or equitable interest in property. *Id.* § 717.101(18). The Act provides that when intangible property is held in the ordinary course of a holder's business and the owner fails to claim it for more than five years, the property is presumed to be unclaimed, except as otherwise provided in the Act. Fla. Stat. § 717.102(1).

The Act addresses different types of property individually. *See id.* §§ 717.104 (traveler's checks), 717.1045 (gift certificates), 717.105 (checks, drafts, or other instruments), 717.106 (bank deposits), 717.107 (life insurance policies), 717.107–717.116 (others). The period after which property is presumed unclaimed varies by category of property, *see, e.g.*, *id.* § 717.104 (15 years for traveler's checks), and the Act has other provisions addressing when property is presumed to be unclaimed. *See, e.g.*, *id.* § 717.105(1) (stating that a check that has been outstanding for more than five years is presumed unclaimed unless the owner communicates with the financial institution about the check).

The holder of property that is presumed unclaimed must notify the Department and turn the property over. *See id*. § 717.117 & 717.119(1). The Department then must "make an effort to notify [the owner] in a cost-effective manner." *Id*. § 717.118(1). But the notification requirement does not apply to traveler's checks, money orders, or similar written instruments. *Id*. § 717.118(3).

Upon receipt, "the state assumes custody and responsibility for the safekeeping of the property." *Id*. § 717.1201(1). Property other than money is sold or otherwise converted to money. *See id*. § 717.122. Earnings on property other than money prior to its sale or conversion to money—stock dividends, for example—accrue to the benefit of the owner. *Id*. § 717.121. But on money in the hands of the Department—either as originally received or upon sale or conversion of other property—no interest or other income accrues to the benefit of the owner.

The Department deposits all funds it receives into the Unclaimed Property Trust Fund. *Id*. § 717.123. The Department retains in that fund an amount not exceeding $15 million—or, for the 2022–2023 fiscal year only, not exceeding $65 million—for "prompt payment of claims" and for payment of costs the Department incurs to administer the Act. *Id*. § 717.123(1). The Act does not indicate whether the Unclaimed Property Trust Fund bears interest.

The Department transfers the remainder of the funds—the Marons say the amount has exceeded $3 billion—to the interest-bearing State School Fund. *Id*. The

Florida Constitution allows use of that fund only to support and maintain free public schools. Fla. Const. art. IX, § 6.

A person claiming an interest in property delivered to the Department as unclaimed may file with the Department a claim on a prescribed form. Fla. Stat. § 717.124. If the Department approves the claim, the Department pays the claimant the amount of money the Department "actually received" or, for property that was sold or otherwise converted to money, the proceeds of the sale or conversion, together with income for the period *prior to* the sale or conversion. *Id.* § 717.124(4)(a). The Department does not compensate a claimant—through interest or otherwise—for money in the Unclaimed Property Trust Fund used to pay costs incurred to administer the Act, for money in the State School Fund used to support and maintain free public schools, or for money held in those funds, whether or not at interest.

**II. Background: This Lawsuit**

The sole named plaintiff in the original complaint was Alieda Maron. But she has filed a consented motion for leave to file an amended complaint joining her husband Lawrence Maron as an additional named plaintiff. This order grants the motion.

The background is this. The Marons learned they were entitled to unclaimed property that had been turned over to the Department—specifically a premium

refund of some kind in the amount of $26.24. The Marons could have asked for and obtained from the Department a prompt payment of that amount, but instead they have left the Department with custody of and responsibility for the property and are pursuing this lawsuit. The Marons' grievance is that under the Act, the Department will pay them only the principal amount of $26.24, without interest or other compensation for the State's retention or use of the money either in the past or as each day passes going forward. They seek to represent a class of the many similarly situated owners of unclaimed property. The amended complaint explicitly demands only declaratory relief—not an injunction or award of damages—but also demands "such other and further relief" to which the Marons and the class may be entitled. Other relief perhaps could include an injunction to the extent otherwise permissible—and if it mattered, the complaint could be amended again to include a demand for such an injunction.

The only defendant is Florida's Chief Financial Officer Jimmy T. Patronis, Jr. in his official capacity.

In count one, the Marons assert a claim under 42 U.S.C. § 1983 and the Takings Clause of the United States Constitution's Fifth Amendment, made applicable to the states by the Fourteenth Amendment. In count two, the Marons again assert a takings claim, this time under Florida Constitution article X, section 6.

The defendant has moved to dismiss. He asserts the Marons lack standing, that their claims are barred by the Eleventh Amendment, that the court has discretion whether to entertain a claim for declaratory relief and should exercise the discretion to dismiss this action, and that the complaint fails to state a claim on which relief can be granted. Although directed to the original complaint, the parties have agreed that the motion should be treated as applicable to the amended complaint, without further briefing.

**III. Standing**

To assess standing, one considers a plaintiff's colorable claims without deciding the merits. The Marons have standing because they assert a colorable—though, as it turns out, ultimately unfounded—claim that they have lost and are continuing to lose, every day, compensation they are entitled to under the federal and state constitutions. This is a colorable claim that, at least going forward, the defendant must pay the Marons money, and that they are entitled to declaratory relief to that effect. The loss is small, but a loss of money supports standing; no minimum amount is required. The loss is concrete and particularized, not conjectural or hypothetical; the loss is traceable to the challenged statute, which the defendant administers; and it is likely, indeed almost certain, that the injury would be redressed, at least going forward, by the declaration the Marons seek. This is

enough for standing. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

To be sure, the Marons' claim rests primarily on the assertion that the State has used their money, not just that the State has held their money in a non-interest-bearing account. The Department retains some of the unclaimed funds at issue in the Unclaimed Property Trust Fund, without receiving interest or other earnings on the funds, at least insofar as alleged in the amended complaint. But even if the Marons' claim is only that interest or other compensation is due on money the State uses, not on money the State merely holds, their claim to compensation is not impermissibly speculative. Money is fungible. One cannot know whether the Marons' $26.24 has resided all along among funds sitting idly or has been used. But the Marons have at least a colorable claim that under these circumstances—where the lion's share of the unclaimed funds are used by the State, not simply retained—all owners of a portion of the unclaimed funds are entitled to an appropriate share of the compensation the State owes based on its use of the funds.

The Marons have standing.

**IV. Eleventh Amendment**

In *Edelman v. Jordan*, 415 U.S. 651 (1974), the Supreme Court held that the Eleventh Amendment bars a claim for *retrospective* relief under 42 U.S.C. § 1983 that would be payable from the state treasury, with exceptions not applicable here.

This precludes the Marons from obtaining a judgment requiring the defendant to pay backward-looking interest or other compensation, whether as the result of a money judgment, injunction, or declaration standing alone. That the unclaimed funds at issue are held in specific funds—the Unclaimed Property Trust Fund or the State School Fund—does not change this result. By this lawsuit, the Marons seek to recover interest or other compensation, not money held in the two funds, so the interest or other compensation would be payable from the state treasury. *Edelman* applies. The Eleventh Amendment bars any claim for retrospective relief.

The result is different for *prospective* relief. Under *Ex parte Young*, 209 U.S. 123 (1908), a § 1983 claim for prospective relief may go forward against an appropriate state official. The defendant administers the Florida Disposition of Unclaimed Property Act and is the appropriate defendant in an *Ex parte Young* action challenging the Act's constitutionality.

In count one, the Marons assert a § 1983 claim not just for retrospective relief but also for prospective relief—for a declaration that the defendant must pay interest or other compensation for use, and perhaps for retention, of unclaimed funds not only in the past but also *going forward*. The claim for prospective relief is a proper *Ex parte Young* claim squarely within the court's jurisdiction and not barred by the Eleventh Amendment. The Eleventh Amendment does not require dismissal of count one.

The same is not true for the state-law claim in count two. In *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 121 (1984), the Supreme Court held that the Eleventh Amendment bars any claim based on state law against a state or against a state officer, even one for prospective relief, subject to exceptions not applicable here. The Eleventh Amendment requires dismissal of count two.

## V. Declaratory Relief

The defendant notes that a district court ordinarily has discretion whether to exercise jurisdiction over a claim for declaratory relief. *See, e.g.*, *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282–88 (1995). That makes little difference here, because if the demand for "other and further relief" could not properly be construed as a demand for injunctive relief, the complaint could easily be amended to include such a demand. Count one includes a claim for prospective relief that is within the court's jurisdiction and not barred by the Eleventh Amendment. And this is precisely the kind of circumstance in which a court should exercise its discretion to entertain a claim for declaratory relief. The dispute over the constitutional validity of the Florida Disposition of Unclaimed Property Act can and should be resolved in this action.

## VI. Merits

As the Marons acknowledge, Florida could have provided for escheat of unclaimed property—for termination of the owner's rights in the property, with

title passing to the State and with the owner having no right to get it back. A statute so providing would be constitutional. *See, e.g.*, *Texaco, Inc. v. Short*, 454 U.S. 516 (1982) (upholding a state statute terminating mineral rights not used or affirmatively renewed for 20 years); *Simon v. Weismann*, 301 F. App'x 107, 114 (3d Cir. 2008) (upholding a statute that, like the Florida statute now at issue, allowed an owner to recover the principal amount of unclaimed property, without interest or other compensation, and noting the state could have taken ownership of the property with no right to get it back). The theory is that property that is unclaimed for a sufficient period is effectively abandoned—and that a state may assume ownership of abandoned property without effecting a constitutional taking for which it must pay just compensation.

Instead of so providing, Florida has taken a more generous approach, giving an owner unlimited time to reassert the owner's rights in the property—unlimited time to recover the principal value of previously unclaimed property. If, as is settled, it would have been constitutional for the State to take the property entirely, without redress, it is difficult to discern why it should be unconstitutional for the State to give back to the owner the principal only, without interest or other compensation. *See Simon*, 301 F. App'x at 114. Indeed, Florida's seems a moderate, workable approach with benefits for both sides: Florida uses for a public

purpose some of the funds it could have taken outright while preserving the owner's ability to get back what the owner essentially abandoned.

The Marons assert, though, that the constitutional issue is controlled by who technically holds title, rather than by substantive considerations. This trivializes the constitutional interest protected by the Takings Clause. And if this was the law, Florida could continue to provide precisely the same substantive treatment of unclaimed funds as it does now—still allowing an owner to recover only principal, not interest or other compensation—simply by rewording the statute. A reworded statute could provide that title passes to the State upon delivery of unclaimed property to the Department of Financial Services and that the (now former) owner could petition for return of the property (or proceeds), with title passing back to the former owner simultaneously with return of the property (or proceeds). On the Marons' title-is-determinative theory, the owner would get no interest or other compensation while the state held title, precisely the same outcome as under current law.

The view that Florida's current approach is constitutional draws support not only from the Supreme Court's decision in *Texaco* and the Third Circuit's well-reasoned decision in *Simon* but also from *Turnacliff v. Westly*, 546 F.3d 1113, 1118–20 (9th Cir. 2008), *Dani v. Miller*, 374 P.3d 779, 793–94 (Okla. 2016), *Hooks v. Kennedy*, 961 So. 2d 425, 432 (La. Ct. App. 2007), and *Clark v.*

*Strayhorn*, 184 S.W.3d 906, 911–15 (Tex. App. Ct. 2006). In addition, a Florida circuit court has upheld the very Florida statute now at issue against a takings claim virtually identical to that asserted by the Marons. *See McKenzie v. Fla. Dep't of Fin. Servs.*, No. 04 CA 755 (Fla. Cir. Ct. Apr. 27, 2005) (included in this record at ECF No. 9-1).

The Seventh Circuit takes the opposite view, *see Goldberg v. Frerichs*, 912 F.3d 1009 (7th Cir. 2019); *Kolton v. Frerichs*, 869 F.3d 532 (7th Cir. 2017), but the Third and Ninth Circuit decisions, as well as the various state-court decisions, are more faithful to *Texaco* and have the better of it.

The Marons say interest follows principal, and that is ordinarily true. They say this means an owner of principal is entitled to any interest generated on the principal—and that a state's appropriation of the interest is an unconstitutional taking. For this they rely on *Phillips v. Washington Legal Foundation*, 524 U.S. 156 (1998), and *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155 (1980). But those decisions addressed a state's taking of interest on funds that were not abandoned—attorney trust accounts in *Phillips* and interpleaded funds in *Webb's*. Those decisions and the concept that interest follows principal say nothing about whether an owner who abandons property is entitled to interest or other compensation when the property is turned over to the state—especially when the property, while in the holder's possession, was sitting idly and generating no

interest or other earnings. The Marons were earning no interest on the premium refund they effectively abandoned. Insisting that they now be paid interest would give them an unwarranted windfall.

The Marons also cite *Tyler v. Hennepin County*, 143 S. Ct. 1369 (2023). There a state seized a condominium for nonpayment of applicable taxes. A sale netted a surplus above the unpaid amount. The Supreme Court held that the state's refusal to remit the surplus to the owner violated the Takings Clause. But in reaching this result, the Court explicitly rejected the assertion that by failing to pay the tax, the owner abandoned the condominium. Far from supporting the Marons, *Tyler* approvingly cited *Texaco* and reiterated that a state may treat as abandoned and thus take without compensation property that an owner has not used or claimed ownership of for a sufficient period. *Tyler* does not help the Marons.

The bottom line: it is constitutionally sufficient for Florida to return the principal of the Marons' unclaimed property without interest or other compensation.

## VII. Conclusion

The Florida Disposition of Unclaimed Property Act requires the holder of property that is unclaimed for a specified period—property that appears to be abandoned—to turn the property over to the State. The Act gives the owner unlimited time to recover the property or the proceeds of the property's sale or

other conversion to money. But the Act does not require the State to pay interest or other compensation for the period when the property was abandoned. This does not violate the United States Constitution Fifth Amendment Taking Clause. Count one of the amended complaint thus fails to state a claim on which relief can be granted.

The claim under the Florida Constitution in count two is barred by the Eleventh Amendment.

For these reasons,

IT IS ORDERED:

1. The motion, ECF No. 18, for leave to amend the complaint is granted. The amended complaint, ECF No. 18-1, is deemed properly filed, nunc pro tunc.

2. The motion to dismiss, ECF No. 10, is granted.

3. Count one of the amended complaint is dismissed with prejudice for failure to state a claim on which relief can be granted.

4. Count two is dismissed without prejudice based on Eleventh Amendment immunity.

5. The clerk must enter judgment and close the file.

SO ORDERED on September 5, 2023.

                                      s/Robert L. Hinkle
                                      United States District Judge