# Exhibit 1

No. ________

# United States Court of Appeals for the Eleventh Circuit

ALIEDA MARON and LAWRENCE MARON, individually and on behalf of all others similarly situated,

*Plaintiffs – Respondents,*

v.

BLAISE INGOGLIA, in his capacity as the Chief Financial Officer of the STATE OF FLORIDA, et al.,

*Defendant – Petitioner.*

On Appeal from the United States District Court for the Northern District of Florida
Hon. Robert L. Hinkle, District Judge
Case No. 4:22-cv-00255-RH-MAF

**PETITION FOR PERMISSION TO APPEAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(f)**

Kimberly V. Masson
FLORIDA DEPARTMENT OF FINANCIAL SERVICES
OFFICE OF THE GENERAL COUNSEL
200 East Gaines Street
Tallahassee, Florida 32399
Telephone: (850) 413-3100
*Counsel for Defendant-Petitioner, Blaise Ingoglia*

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

Defendants are individuals named in their official capacities as the Chief Financial Officer and the Commissioner of Education for the State of Florida with no corporate affiliations.

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-3(b), the undersigned certifies that there are no publicly traded corporations or companies that have an interest in the outcome of this case or appeal.

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-26.3 and 27-1(a)(9), the undersigned certifies that the following is a complete list of interested persons:

1. Black, Lauren (counsel for Plaintiffs)
2. Carbone, Francis (counsel for Defendants)
3. Craig E. Rothburd, P.A. (counsel for Plaintiffs)
4. Florida Department of Education (Defendant agency)
5. Florida Department of Financial Services (Defendant agency)
6. Gallagher & Kennedy, P.A. (counsel for Defendants)
7. Green, Kelly (counsel for Plaintiffs)

8. Gunster, Yoakley & Stewart, P.A. (counsel for Plaintiffs)
9. Hinkle, Robert L. (United States District Judge)
10. Ingoglia, Blaise, in his official capacity as Chief Financial Officer of the State of Florida (Defendant)
11. Jacquot, Joseph (counsel for Plaintiffs)
12. Jeeves Law Group, P.A. (counsel for Plaintiffs)
13. Jeeves Mandel Law Group, P.C. (counsel for Plaintiffs)
14. Jeeves, Scott (counsel for Plaintiffs)
15. Mack, Henry in his official capacity as the Florida Commissioner of Education (Defendant)
16. Mandel, Roger (counsel for Plaintiffs)
17. Maron, Alieda (Plaintiff)
18. Maron, Lawrence (Plaintiff)
19. Masson, Kimberly V. (counsel for Defendants)
20. O'Dell, Julie (counsel for Plaintiffs)
21. O'Malley, Kevin E. (counsel for Defendants)
22. Porter, Hannah H. (counsel for Defendants)
23. Rothburd, Craig (counsel for Plaintiffs)
24. Smith, Katzenstein, & Jenkins (counsel for Plaintiffs)

25. Susman, Arthur (counsel for Plaintiffs)

26. The Law Office of Arthur Susman (counsel for Plaintiffs)

27. Wagner, Michael (counsel for Plaintiffs)

28. Woodford, Kyle (counsel for Plaintiffs)

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS....................................i

TABLE OF CONTENTS....................................iv

TABLE OF AUTHORITIES....................................vi

INTRODUCTION....................................1

QUESTION PRESENTED....................................3

RELIEF REQUESTED....................................3

RELEVANT BACKGROUND....................................3

ARGUMENT....................................8

I. THE DISTRICT COURT MISAPPLIES THE LAW OF THE CASE AND BUILDS ITS RULE 23 ANALYSIS ON AN ISSUE THIS COURT DID NOT DECIDE....................................10

A. *Maron* did not adjudicate Plaintiffs' takings claim on the merits....................................11

B. The law-of-the-case error materially altered the Rule 23 analysis....................................14

II. THE DISTRICT COURT FURTHER ERRED BY TREATING UNRESOLVED LEGAL QUESTIONS AS SUPPORT FOR CERTIFICATION WITHOUT DETERMINING WHETHER THEIR ANSWERS PERMIT CLASS TREATMENT....................................16

A. Unresolved abandonment questions determine method of proof and structure of class....................................19

B. The court cannot postpone questions whose answers determine whether the class remains cohesive....................................21

C. The unresolved questions affect commonality, typicality, and Rule 23(b)(2), not merely the ultimate merits....................................23

III. THE NATURE AND POSTURE OF THIS CASE WARRANT IMMEDIATE REVIEW....................26

CONCLUSION....................29

CERTIFICATE OF COMPLIANCE....................31

CERTIFICATE OF SERVICE....................32

# TABLE OF AUTHORITIES

**Cases**

*AcryliCon USA, LLC v. Silikal GMBH & Co.*,
46 F.4th 1317, 1327 (11th Cir. 2022)....................................10
*Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*,
568 U.S. 455 (2013) ...................................................21-22
*Brown v. Electrolux Home Products, Inc.*,
817 F.3d 1225 (11th Cir. 2016) ....................................2, 17, 21
*Lebron v. Secretary, Florida Department of Children & Families*,
772 F.3d 1352 (11th Cir. 2014)...........................................10
*Maron v. Chief Financial Officer of Florida*,
136 F.4th 1322 (11th Cir. 2025) .......................1, 5, 11-14, 23-24
*Prado-Steiman ex rel. Prado v. Bush*,
221 F.3d 1266 (11th Cir. 2000) ................................8-10, 26-28
*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)................................................18, 21
*Warner v. Hillsborough County Clerk of Courts*,
187 F.4th 1318 (11th Cir. 2026)...........................................19
*Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*,
881 F.3d 835 (11th Cir. 2018)...............................................11

**Statutes**

Ch. 717, Fla. Stat.........................................................*passim*

§ 717.124(4)(a), Fla. Stat...................................................4

## INTRODUCTION

This petition concerns a threshold legal error that permeates the class-certification order ("Order," Ex. A). The district court treated this Court's pleading-stage decision in *Maron v. Chief Financial Officer of Florida*, 136 F.4th 1322 (11th Cir. 2025), as establishing that Florida effects a compensable taking whenever property placed in its custody was not abandoned. But *Maron* did not decide that question. It identified ownership, direct appropriation, and just compensation as distinct inquiries on remand.

That mistaken premise shaped the district court's Rule 23 analysis. Because the court treated non-abandonment as establishing the taking, direct appropriation disappeared from the issues requiring adjudication. The court then identified numerous unresolved questions concerning common-law abandonment, statutory abandonment, applicable statutes, due process, retroactivity, compensation, and relief as "common issues," while postponing answers that determine whether they can be adjudicated class-wide.

The result is a decades-spanning class certified after discovery closed and less than seven weeks before trial, even though the court has

not determined the legal framework governing the class. Depending on the answers to those reserved questions, the case may require individualized common-law abandonment inquiries, different treatment under materially different statutory regimes, subclasses, or separate analysis of whether Florida's custodial program appropriates different antecedent property interests. *Brown v. Electrolux Home Products, Inc.* does not permit a court to count an unresolved legal question as commonality when one answer permits class-wide proof but another requires individualized proof or materially different treatment. 817 F.3d 1225, 1234–35 (11th Cir. 2016).

Proceeding directly to class-wide trial under those circumstances would require the parties and the district court to litigate first and determine afterward whether the certified class was the proper vehicle for doing so. Rule 23(f) permits this Court to intervene before that expenditure occurs. Because certification rests on substantial legal weaknesses and trial is set for November 16, immediate review is warranted.

## QUESTION PRESENTED

Did the district court err in certifying a class based on its misapplication of this Court's earlier opinion and without resolving legal questions that determine whether the claims are capable of class-wide adjudication?

## RELIEF REQUESTED

Petitioner requests that this Court grant permission to appeal the district court's Order, vacate that Order, and remand for determination of class certification according to the correct legal standards.

## RELEVANT BACKGROUND

Sometime in June 2022, Plaintiffs learned through Florida's Treasure Hunt website that Allstate had reported and remitted a $26.24 uncashed insurance-premium refund check to the Florida Department of Financial Services ("DFS") under the Florida Disposition of Unclaimed Property Act, chapter 717, Florida Statutes. Plaintiffs did not possess, control, use, deposit, invest, or earn interest on this check or the funds it represented. Those funds remained with Allstate until remitted to the State.

Instead of claiming this property through the statutorily prescribed claims process, Plaintiffs filed suit alleging that chapter 717 violated the Takings Clause of the United States Constitution and the Florida Constitution by failing to compensate owners for the use, earnings, or time value of property while it remained in State custody. Specifically, they challenge section 717.124(4)(a), Florida Statutes, which directs DFS to pay over to a successful claimant the same amount that was remitted to DFS. Plaintiffs' main contention was that Florida kept and used earnings accruing on property while it was in State custody and sought prospective declaratory and injunctive relief requiring payment of those earnings when Plaintiffs later filed a claim.

DFS moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), challenging standing, the sufficiency of the federal takings claim, and the availability of the requested relief under the Eleventh Amendment. ECF No. 10. The district court concluded that Plaintiffs had standing and that the Eleventh Amendment did not bar prospective relief but dismissed the federal claim with prejudice under Rule 12(b)(6) and the state-law claim without prejudice. ECF No. 27.

Plaintiffs appealed only the dismissal of the federal claim. *Maron*, 136 F.4th at 1327–28.

The posture of that appeal is important to note. The appeal arose from the pleading-stage dismissal and addressed standing, ripeness, sovereign immunity, and the sufficiency of Plaintiffs' federal takings claim. *Id.* at 1328–36. Consistent with Plaintiffs' allegations and arguments, this Court repeatedly described the claim before it as one seeking recovery of earnings accruing while property was in the State's custody. *See id.* at 1327–28, 1330–31, 1334–35. This Court vacated the dismissal and remanded for further proceedings. *Id.* at 1336. In addressing its holding, this Court identified three inquiries on which the parties "may wish to focus" on remand: whether the refund was Plaintiffs' property when Florida took custody, including whether it had been abandoned; whether Florida directly appropriated that property for its own use; and, if so, whether chapter 717 failed to provide just compensation. *Id.* at 1334–36.

The case now differs from the case this Court previously reviewed. On remand, the parties conducted fact and expert discovery. During fact discovery, Plaintiffs asserted that the taking was complete when the

State put the property in its custody to public use. During expert discovery, however, Plaintiffs replaced their claim to accrued earnings with a claim for delay compensation for the State's failure to pay just compensation immediately upon accepting custody. ECF No. 83 at 9-10.

On June 5, 2026, Plaintiffs moved to certify a class of persons whose property was held under chapter 717. ECF No. 80. At that time, Plaintiffs still had not identified in the pleadings the specific property interest allegedly appropriated. Chapter 717 was then amended while dispositive motions were being prepared. On June 26, 2026, the Governor approved chapter 2026-174, Laws of Florida, effective immediately. Among other changes, the 2026 amendment restores "abandoned property" terminology to chapter 717, better defines the objective events that produce that statutory status, revises provisions governing owners and apparent owners, and expressly reinforces that chapter 717 effects a custodial abandoned property regime.

The parties filed cross-motions for summary judgment on June 29, 2026. ECF Nos. 89, 90. In their July 20 opposition to Defendants' motion, Plaintiffs identified for the first time the allegedly taken property as their contractual right to payment from Allstate and asserted that Florida

appropriated that right when the funds were remitted to DFS. ECF No. 96.

The district court heard argument on the summary judgment motions on August 20, 2026. ECF No. 105. On August 24, the court denied both motions for summary judgment, deemed the Second Amended Complaint further amended to address the current version of chapter 717, and expressly made no ruling concerning the continuing effect or relevance of the superseded provisions of the former Act. The court set trial for November 16, 2026. ECF No. 106 at 1–2.

Briefing on class certification then resumed. On September 29, 2026, approximately six weeks before trial, the district court granted Plaintiffs' motion and certified a class consisting, subject to two exceptions not relevant here, of "[a]ll persons for whom the State of Florida holds funds under Florida Statutes chapter 717 as of the date of the judgment in this action . . . . " ECF No. 111 at 16.

The Order states that it "treats" as established by this Court's prior decision that Florida must pay interest on unclaimed property it invests or uses unless the property was abandoned. *Id.* at 2. Applying this reasoning, the Order identifies for later resolution questions including

whether common-law abandonment remains applicable, whether former or current versions of chapter 717 effect statutory abandonment, whether any such abandonment complies with due process, whether the 2026 amendments apply to property remitted before their enactment, and whether entitlement to interest depends on whether property earned interest before entering State custody. *Id.* at 7–8. The Order did not limit certification to those identified issues or otherwise define the claims, issues, or defenses to be adjudicated on a class-wide basis. Trial remains set for November 16. Thus, less than seven weeks after certification, the case is proceeding toward trial without a determination of which issues will be tried for the class and which, if any, require individual adjudication.

**ARGUMENT**

Rule 23(f) authorizes this Court to permit an interlocutory appeal from an order granting class certification. Fed. R. Civ. P. 23(f). In *Prado-Steiman ex rel. Prado v. Bush*, this Court identified several considerations relevant to that discretion, including whether the certification decision contains a "substantial weakness" likely amounting to an abuse of discretion; whether immediate review will resolve an

unsettled legal issue important to the litigation; and the procedural posture of the case, including the status of discovery and district-court proceedings. 221 F.3d 1266, 1274–76 (11th Cir. 2000).

Those considerations converge here. The Order rests on a threshold legal error concerning the meaning of this Court's own prior decision in *Maron* and then uses unresolved questions flowing from that premise as the common issues supporting certification. That error is not merely one disagreement about how Rule 23 was applied to a developed factual record. It supplies the legal framework for the certified class.

The timing further favors immediate review. The class was certified months after discovery closed and less than seven weeks before trial. Yet legal questions concerning abandonment, the governing statutory regimes, direct appropriation, and their effect on the certified class remain unresolved. Their resolution may determine whether common liability can be established, whether materially different groups can properly proceed together, and what issues remain for trial.

This petition therefore presents the circumstances contemplated by *Prado-Steiman*: substantial weakness arising from legal error, unresolved legal questions central to certification, and a procedural

posture in which immediate review will materially assist the district court and the parties before an imminent class-wide trial. This Court should grant review before the Order's mistaken premise becomes the framework for that trial.

## I. THE DISTRICT COURT MISAPPLIES THE LAW OF THE CASE AND BUILDS ITS RULE 23 ANALYSIS ON AN ISSUE THIS COURT DID NOT DECIDE.

The Order begins from a proposition it says this Court established in *Maron*: that "the State must pay interest—perhaps net of expenses—on unclaimed property invested or used by the State, unless the property has been abandoned." ECF No. 111 at 2. That premise gives the prior decision law-of-the-case effect it does not have.

The law-of-the-case doctrine binds a district court to issues actually decided on appeal, expressly or by necessary implication. *Lebron v. Secretary, Florida Department of Children & Families*, 772 F.3d 1352, 1360 (11th Cir. 2014). It does not convert assumptions made because of the procedural posture into adjudications on the merits. *Id.* The "mandate rule does not and could not extend to issues the appellate court never addressed." *AcryliCon USA, LLC v. Silikal GMBH & Co.*, 46 F.4th 1317, 1327 (11th Cir. 2022). And this Court reviews a district court's

interpretation and application of an appellate mandate de novo. *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 881 F.3d 835, 843 (11th Cir. 2018).

**A. *Maron* did not adjudicate Plaintiffs' takings claim on the merits.**

*Maron* came to this Court following dismissal under Rules 12(b)(1) and 12(b)(6). That posture controlled what this Court decided and what it assumed.

This Court "assume[d] for purposes of standing that the Marons had a 'legally protected interest' in the refund." *Maron*, 136 F.4th at 1329. It explained why: "whether they have such an interest implicates the merits," because a takings plaintiff ultimately must demonstrate a constitutionally protected property interest. *Id.* When a jurisdictional attack implicates an element of the cause of action, this Court explained, that element is assumed for jurisdictional purposes rather than decided as part of the standing inquiry. *Id.* The ripeness analysis likewise depended on allegations, not merits findings. *Id.* at 1332. This Court expressly cautioned that Plaintiffs "may not be able to prove the factual content of these allegations." *Id.*

The opinion then turned to whether the complaint stated a *per se* takings claim, accepting the allegations as true. *Id.* at 1334-36. It rejected

the district court's reasoning that Florida's custodial statute was constitutional merely because the State might instead have enacted a statute permanently escheating the property. *Id.* But this Court did not replace that rejected rationale with a judgment establishing liability.

Instead, it remanded and identified three separate inquiries on which the parties "may wish to focus," while expressly permitting other inquiries: (1) whether the refund remained Plaintiffs' property, including whether it had been abandoned or chapter 717 itself constitutionally effectuated abandonment; (2) whether Florida "directly appropriate[d]" that property "for its own use"; and (3) if such an appropriation occurred, whether the Act failed to provide just compensation. *Id.* at 1336.

Those are sequential inquiries. The first asks whether Plaintiffs possessed protected property. The second asks whether Florida took it. Only the third asks what compensation was constitutionally required. That is not a merits judgment that non-abandonment establishes liability. It is a roadmap for litigating whether a *per se* taking occurred.

The Order nonetheless states that *Maron* established that Florida "must pay interest" on property it invests or uses "unless the property has been abandoned." ECF No. 111 at 2. Operating from that premise,

the Order lists nine purportedly common questions involving common-law abandonment, statutory abandonment, due process, retroactivity, entitlement to interest, sovereign immunity, and offsets. *Id.* at 7–8. Direct appropriation is absent.

That omission cannot be reconciled with *Maron*'s remand framework. Even if property was not abandoned and Plaintiffs retained a constitutionally protected interest, *Maron* separately requires consideration of whether Florida "directly appropriate[d]" that interest "for its own use." *Maron*, 136 F.4th at 1334–36. The Order effectively turns the first inquiry into the dispositive trigger for liability and moves directly from non-abandonment to compensation.

The distinction is especially consequential because Plaintiffs' theory on remand is no longer the earnings theory described in the prior appeal. Plaintiffs have disclaimed any right to earnings accrued while in the State's custody. They now identify the allegedly taken property as a contractual right to payment from Allstate, contend that the taking occurred when Allstate remitted funds to DFS, and seek delay compensation for that alleged completed taking.

Under that theory, the appropriation inquiry is unavoidable. Plaintiffs must establish not merely that they retained a protected interest, but that Florida's custodial receipt of property appropriated that interest within the meaning of the Takings Clause. That question has never been decided.

**B. The law-of-the-case error materially altered the Rule 23 analysis.**

The takings inquiry identified in *Maron* is sequential. Plaintiffs first must establish that they possessed a protected property interest when the alleged taking occurred. Whether that property had been abandoned, either in fact or through a constitutionally valid statutory mechanism, bears on that threshold inquiry. If a protected interest survived, Plaintiffs must next establish that Florida directly appropriated that interest for its own use. Only if an appropriation occurred does the inquiry proceed to whether the State provided just compensation and, if not, what compensation was required. *Maron*, 136 F.4th at 1334–36.

The Order collapses those distinct steps. By treating *Maron* as establishing that Florida must pay interest whenever property in State custody was not abandoned, the court uses abandonment not only to

determine whether class members retained protected property, but effectively to establish the taking itself. Direct appropriation disappears, and the analysis proceeds from non-abandonment directly to compensation.

That shortcut makes the proposed class appear far more uniform than the takings inquiry actually permits. Abandonment appears to supply the central common liability question. The Marons appear typical because they can challenge statutory abandonment on behalf of other class members. And because all reported property ultimately reaches DFS and successful claims are paid under the same statutory provision, the court can treat Defendants' uniform failure to add "interest" as the common constitutional injury.

But chapter 717 supplies a common destination and payment mechanism; it does not thereby supply a common antecedent property interest or a common act of appropriation. The Marons now contend that Florida appropriated their contractual right to payment from Allstate. Other class members may possess rights arising from bank deposits, wages, negotiable instruments, securities, court-registry funds, government payments, or other legal relationships. Whether Florida's

custodial mechanism appropriated those interests may depend on what rights existed before remittance, what the holder transferred, what effect statutory discharge had on the antecedent obligation, and what rights remained against or arose against Florida.

The district court did not determine whether those questions are susceptible to common proof because its reading of *Maron* rendered the appropriation inquiry unnecessary. The court's law-of-the-case premise defined what questions it believed Plaintiffs had to prove class-wide and therefore shaped its findings on commonality, typicality, and Rule 23(b)(2). That is a certification error, not merely a disagreement about the ultimate merits.

## II. THE DISTRICT COURT FURTHER ERRED BY TREATING UNRESOLVED LEGAL QUESTIONS AS SUPPORT FOR CERTIFICATION WITHOUT DETERMINING WHETHER THEIR ANSWERS PERMIT CLASS TREATMENT.

The district court compounds its threshold error by treating unresolved legal questions as reasons to certify rather than asking whether their answers permit class-wide adjudication. The Order identifies numerous unresolved legal questions as evidence of commonality while expressly acknowledging that individual issues may emerge "depending on the later ruling on the merits." ECF No. 111 at 6.

*Brown v. Electrolux Home Products, Inc.* holds that Rule 23 requires the opposite approach. 817 F.3d 1225 (11th Cir. 2016).

In *Brown*, the district court identified unresolved questions of state warranty law as "common questions" supporting certification without deciding them. *Id.* at 1234–35. This Court vacated certification and held that a district court must decide a disputed question of law or fact when its answer bears on whether a Rule 23 requirement is satisfied. *Id.* at 1234. That remains true when the question also concerns the merits. *Id.* Most importantly here, a legal question bears on Rule 23 when one answer permits class-wide proof but another requires individualized proof. *Id.* The court errs by counting the unresolved legal question itself as commonality and postponing the answer until later. *Id.* at 1234–35.

Although *Brown* involved predominance under Rule 23(b)(3), the rule it articulated was not limited to predominance: "if a question of law bears on a requirement of Rule 23, then the district court must answer it." *Id.* at 1234. That requirement follows from Rule 23's rigorous-analysis mandate and applies equally where the unanswered question determines commonality, typicality, or whether indivisible relief is appropriate under Rule 23(b)(2).

That is what happened here. The district court described this case as "chock full of issues that are appropriate for class treatment," notwithstanding individual issues that, "depending on the later ruling on the merits," might or might not be susceptible to class-wide resolution. ECF No. 111 at 6. It then identified nine "common issues," including whether chapter 717 supersedes common-law abandonment; whether common-law abandonment requires actual or constructive knowledge; which party bears the burden of proving abandonment; whether the former Act effected statutory abandonment consistent with due process; whether the current Act does so; and whether the current Act applies to property already in State custody. *Id.* at 7–8.

Those questions may be phrased commonly. But Rule 23 requires more. A common question must be capable of producing a common answer that resolves an issue central to the class claims "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The unanswered questions identified by the Order instead determine whether the litigation remains common at all.

### A. The unresolved abandonment questions determine the method of proof and structure of the class.

Abandonment illustrates the problem most starkly. The Order identifies as common questions whether chapter 717 supersedes common-law abandonment, whether the former and current versions of chapter 717 effect statutory abandonment, and whether any statutory abandonment is constitutionally valid. ECF No. 111 at 7. But the court does not answer those questions before certifying the class.

If chapter 717 did not supersede Florida common law or itself effect abandonment, the State's abandonment defense may turn on common-law intent. The Order recognizes that Florida common law requires evidence that the owner intended to abandon the property, while leaving unresolved whether the owner must actually have known of the property or whether constructive knowledge is sufficient. *Id.* at 4 (citing *Warner v. Hillsborough County Clerk of Courts*, 187 F.4th 1318 (11th Cir. 2026)). Under that branch, liability may require owner-specific evidence concerning knowledge, conduct, communications, nonuse, and intent.

If chapter 717 instead can effect abandonment by operation of law, different questions follow. The class extends across materially different versions of chapter 717 enacted over the last 60 years. The court must

determine whether those former versions effected abandonment, whether the current chapter 717 does so, whether the applicable statutory mechanism comports with due process, and whether the 2026 amendments govern property remitted before their effective date. The Order identifies those questions but answers none of them. *Id.* at 7.

Those alternatives have materially different Rule 23 consequences. One may require individualized proof of common-law abandonment. Another may permit common treatment only among owners governed by the same materially equivalent statutory regime. Still another may require subclasses based on differences in governing law, notice, or the legal consequences of dormancy and remittance.

The Marons cannot simply represent every resulting group because they happen to share a threshold legal argument that chapter 717 did not effect abandonment. Typicality must be assessed against the claims actually requiring adjudication, including defenses and legal rules applicable to the entire represented class. The district court could not determine those matters without first answering the legal questions it postponed.

That is *Brown*. There too, the preliminary legal questions could be asked of the whole class. But this Court held that the district court erred by treating them as "common questions" because their answers determined the mix of common and individualized proof. 817 F.3d at 1234–35. What matters is not how many common-sounding questions can be listed, but whether resolving them produces answers capable of advancing the claims of the class together. *Id.* at 1235; *Wal-Mart*, 564 U.S. at 350.

The abandonment questions fail to show commonality for the same reasons. They are not simply merits questions whose answers will cause the entire class to prevail or fail together – they determine what legal rule applies, what evidence is necessary, whether different groups of owners must be treated differently, and ultimately whether the certified class can remain cohesive. Calling those questions "common" does not answer the Rule 23 inquiry. It postpones it.

### B. The court cannot postpone questions whose answers determine whether the class remains cohesive.

The Order relies on the principle that merits questions generally should not be decided at class certification unless necessary to determine whether Rule 23 is satisfied. ECF No. 111 at 5 (citing *Amgen Inc. v.*

*Connecticut Retirement Plans & Trust Funds*, 568 U.S. 455, 466 (2013)). That principle is correct. Its application here is not.

*Amgen* held that materiality did not have to be proved at certification because materiality was an objective question common to the entire securities-fraud class. 568 U.S. at 467–70. Either the alleged misrepresentation was material for everyone or it was material for no one. A failure of proof would end the case for the entire class and would not leave individualized claims requiring different proof. *Id.*

The questions deferred here have the opposite characteristic. If statutory abandonment fails, the case does not necessarily end for everyone. The litigation may move to individualized common-law abandonment. If one version of chapter 717 effectuated abandonment but another did not, the answer does not resolve the claims of the entire class together. It separates class members according to governing statutory regimes. If different notice provisions produce different constitutional results, subclasses may be required. And even if a class member establishes non-abandonment, the separate fact-specific appropriation inquiry identified in *Maron* remains.

The answers therefore do not merely determine who wins on a common merits question. They determine how the claims must be proved and whether the persons swept into the certified class can continue litigating together. That is the distinction between *Amgen* and *Brown*. A court may leave unresolved a merits question when either answer applies uniformly to the class. It cannot postpone a question when one answer preserves class-wide adjudication and another produces individualized proof, different governing law, or different class groupings.

### C. The unresolved questions affect commonality, typicality, and Rule 23(b)(2), not merely the ultimate merits.

The consequences extend throughout the Order. The court cannot determine whether its identified questions generate class-wide answers without first determining which legal rules govern and what proof those rules require. Nor can it determine whether the Marons' claims are typical of the claims of persons governed by materially different statutory regimes or possessing materially different property interests.

That problem is particularly acute with respect to the property allegedly taken. As Section I explains, *Maron* identified direct appropriation as a separate remand inquiry. 136 F.4th at 1336. Yet

appropriation does not appear among the issues the Order leaves for class-wide resolution. That omission matters because chapter 717 may provide a common mechanism of custody without supplying a common antecedent property interest.

The certified class is not limited to persons who possessed the same legal right against a holder before remittance. The Marons now claim their contractual right to payment from Allstate was appropriated. Yet property reaching DFS under chapter 717 may derive from a variety of legally-distinct relationships, such as unpaid wages, a bank account, a negotiable instrument and its underlying obligation, securities or distributions, or court-registry funds.

Those differences are relevant to Rule 23 because a takings claim analysis begins with the property right allegedly taken. Determining whether Florida appropriated that property may require examining what rights existed before custody, what the holder transferred, what effect chapter 717's discharge of the holder had on the antecedent obligation, what rights survived or arose upon remittance, and whether Florida appropriated the antecedent interest or instead preserved its economic value through a substitute custodial obligation.

The district court did not determine whether those questions can be answered through proof common to the certified class. Nor did it determine whether the Marons' contractual right against Allstate is typical of the property interests possessed by owners whose funds arose from fundamentally different legal relationships.

The same unresolved questions undermine the court's Rule 23(b)(2) analysis. The Order concludes that Rule 23(b)(2) is "easily" satisfied because Defendants will return property without interest "for one reason and one reason only": chapter 717 directs them to do so. ECF No. 111 at 14. But uniform governmental conduct does not, by itself, establish a uniform constitutional injury. Whether returning the amount held by DFS without additional compensation violates the Takings Clause still depends on whether the claimant retained a protected property interest, whether Florida appropriated that interest, and whether any resulting injury is common to the class.

Those are not merely questions bearing on ultimate success. They determine whether the alleged injury can be established through common proof, whether the Marons can represent the persons swept into

the class, and whether a single declaration or injunction is "appropriate respecting the class as a whole" as required by Rule 23(b)(2).

Rule 23 permits certification based on common answers, not unresolved forks in the road. Because the district court relied on those forks as support for certification without first determining where they lead, the Order does not reflect the rigorous analysis required by Rule 23 and *Brown*.

## III. THE NATURE AND POSTURE OF THIS CASE MAKE IMMEDIATE REVIEW WARRANTED.

The district court certified the class on September 29. Trial is November 16. Pretrial proceedings are already underway. Yet the court has deferred legal questions that determine what class, if any, can properly be tried.

That posture is highly relevant under *Prado-Steiman*. In deciding whether interlocutory review is warranted, this Court considers the "nature and status of the litigation," including the status of discovery, pending motions, the length of the proceedings, and other district-court rulings intertwined with certification. 221 F.3d at 1276. The Court also recognizes that review may be warranted when it will spare the parties

and district court the expense of litigating to judgment under a legally defective certification framework. *Id.* at 1274–75.

This case presents that problem in unusually concrete form. Certification occurred less than seven weeks before trial and after fact and expert discovery, cross-motions for summary judgment, a material shift in Plaintiffs' asserted property interest, amendment of chapter 717, and an order deeming the complaint further amended to encompass the new statute while leaving unresolved what effects the new statute has.

More fundamentally, the court has not determined the legal framework under which the certified class is to be tried. If chapter 717 did not itself constitutionally effect abandonment, common-law abandonment may require individualized proof concerning an owner's intent, knowledge, and conduct. If chapter 717 can effect abandonment, the court must determine which materially different versions of the statute do so, whether the relevant statutory regimes provided constitutionally sufficient notice, and which regime governs property remitted before the 2026 amendments. Those answers may require different treatment of different groups of owners and may require subclasses the Marons are not situated to represent.

And abandonment is only the first step. Even class members whose property was not abandoned must still establish the protected interest they possessed and whether Florida's custodial program directly appropriated that interest. The answers to those questions will differ depending on the legal relationship from which the reported property arose.

The answers to these questions and those posed by the district court determine what evidence matters, which defenses apply to whom, whether the Marons' claims are typical, whether subclasses are necessary, and whether any alleged taking can be established through common proof. Yet none has been resolved before trial. The court has therefore certified first and left until later the questions that determine who can properly be tried together, under what law, and on what proof.

Rule 23(c)(1)(C)'s authority to modify a certification order before final judgment does not solve that problem. *Prado-Steiman* appropriately cautions against interlocutory review where certification remains fluid because discovery and factual development may refine the class. 221 F.3d at 1275–77. But this case has reached the opposite extreme. Certification arrived at the end of the case, not the beginning. The remaining

uncertainty is not simply the ordinary product of an undeveloped record. Some threshold questions are legal; others may require additional development precisely because Plaintiffs changed their theory only after discovery had effectively concluded. Either way, proceeding immediately to trial cannot cure the problem.

A class-wide trial should not become the mechanism for discovering what class should have been certified. Without immediate review, Defendants must prepare to defend a class whose governing abandonment rules, statutory groupings, antecedent property interests, and appropriation theories remain unsettled, while the district court must devote trial resources to claims that may ultimately require different subclasses or individualized proceedings. If this Court later determines that certification rested on the wrong legal framework, much of that work will have accomplished nothing.

Rule 23(f) exists to permit review before that quagmire becomes a completed trial record. The posture of this case strongly favors granting the petition.

## CONCLUSION

This Court should grant Petitioner permission to appeal the Order.

Respectfully submitted on October 13, 2026,

*/s/Kimberly Masson*
Kimberly Masson
Department of Financial Services
Office of the General Counsel
200 East Gaines Street
Tallahassee, FL 32399
Telephone: (850) 413-3100
Facsimile: (850) 488-0697
kimberly.masson@myfloridacfo.com

*Counsel for Defendant-Petitioner,*
*Blaise Ingoglia*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

This petition complies with the type-volume limits of Federal Rule of Appellate Procedure 5(c)(1) because it contains 5,184 words (based on the Microsoft Word word-count function) excluding the parts of the petition exempted by Federal Rule of Appellate Procedure 32(f).

This petition complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced serif typeface using Microsoft Word in 14-point Century Schoolbook font set in plain, roman style.

*/s/Kimberly Masson*
Kimberly V. Masson

**CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2026, I electronically filed the foregoing Petition for Permission to Appeal Pursuant to Rule 23(f) with the Clerk of the Court of the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the CM/ECF system.

*/s/Kimberly Masson*
Kimberly V. Masson

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION**

ALIEDA MARON et al.,

Plaintiffs,

v. CASE NO. 4:22cv255-RH-MAF

BLAISE INGOGLIA et al.,

Defendants.

_____________________________/

**ORDER CERTIFYING A CLASS**

This case presents a challenge to the State of Florida's refusal to pay interest when it returns unclaimed funds to their owner. The plaintiffs have moved to certify a class. This order grants the motion.

## I. Background

Like most states, the State of Florida takes custody of property that is unclaimed for a sufficient period. Much of the unclaimed property is money, and the State sells or otherwise converts the rest to money. The State invests some of the money, accruing interest, but spends the lion's share, mostly for expenses incurred to operate the public schools.

Florida charges a person claiming an interest in property nothing for its services—for collecting the property, keeping a record of it, and advertising its availability for return—and sets no deadline for the person to reclaim the property. *See* Fla. Stat. § 717.124(4)(a) (requiring the State to pay a successful claimant "the amount the department actually received or the proceeds if it has been sold by the department"). But the person can recover only principal, not interest. The plaintiffs assert that by failing to pay interest, the State takes the unclaimed property without just compensation, thus violating the Takings Clause of the United States Constitution.

The case is here on remand from the United States Court of Appeals for the Eleventh Circuit. *See Maron v. Chief Fin. Officer of Fla.*, 136 F.4th 1322 (2025). This order treats three principles as having been established by the Eleventh Circuit's decision. First, the State must pay interest—perhaps net of expenses—on unclaimed property invested or used by the State, *unless the property has been abandoned*. Second, unclaimed property can be abandoned in two ways, referred to in this order as subjectively abandoned or statutorily abandoned—concepts defined more completely below. Third, an order requiring payment of interest, even if accrued in the past, may be permissible under *Ex parte Young*, 209 U.S. 123 (1908), and will not necessarily run afoul of *Edelman v. Jordan*, 415 U.S. 651

(1974), which held that the Eleventh Amendment bars retrospective relief under 42 U.S.C. § 1983 that would be payable from the state treasury.

To be sure, these three principles could be altered by the Eleventh Circuit en banc or the Supreme Court on a later appeal. Whether interest must be paid on unclaimed property is the subject of a circuit split. *Compare Maron*, 136 F.4th at 1334–36 (holding the failure to pay interest may violate the Takings Clause), *and Cerajeski v. Zoeller*, 735 F.3d 577 (7th Cir. 2013) (same), *with Simon v. Weissmann*, 301 F. App'x 107 (3d Cir. 2008) (holding the failure to pay interest does not violate the Takings Clause), *and Turnacliff v. Westly*, 546 F.3d 1113, 1118–20 (9th Cir. 2008) (same). Similarly, whether the Eleventh Amendment bars an order to pay previously accrued interest is the subject of a circuit split. *Compare Maron*, 136 F.4th at 1333–34 (suggesting such an order does not violate the Eleventh Amendment), *with Albert v. Lierman*, 152 F.4th 554, 560–63 (4th Cir. 2025) (holding an award of back interest barred by the Eleventh Amendment), *and Ambriz v. Hancock*, No. 23-50582, 2025 WL 2945681 (5th Cir. Oct. 17, 2025) (holding *Ex parte Young* does not apply to a request for interest on unclaimed property). But the possibility of an en banc or Supreme Court change of course is too remote to be a factor in the current class-certification analysis.

## II. Terminology

Before turning to analysis of the class-certification issues, a word is in order about terminology.

First, "interest." The plaintiffs have steadfastly asserted from the outset that they are entitled to more than just the principal amount of the property that was turned over to the State. But the plaintiffs have been less than clear about whether they seek interest or some other form of compensation. For class-certification purposes it makes no difference. For convenience, this order usually refers simply to "interest," without adding any additional reference to any other kind of compensation.

Second, "subjective abandonment." This order uses this term to apply to abandonment under Florida common law, not under the statute at issue, Florida Statutes chapter 717. *Maron* refers to this as "in fact abandoned." *Maron*, 136 F.4th at 1336. Under Florida common law, "property can be presumed abandoned only if there is evidence that the owner intended to abandon the property." *Warner v. Hillsborough Cnty. Clerk of Courts*, No. 24-10748, 2026 WL 2388937, *10 (11th Cir. Aug. 17, 2026) (citing *Dade Cnty. v. City of N. Miami Beach*, 69 So. 2d 780, 783 (Fla. 1953)). Use of the term "subjective abandonment" is not an effort to address the substantive standard more precisely. Subjective abandonment can occur when a person makes no effort to exercise dominion over property—but this

order expresses no view on whether the person must *know* of the property or whether, instead, it is sufficient that the person *should have known* of the property.

Third, "statutory abandonment." This order uses this term to apply to abandonment that chapter 717 "itself effectuated." *Maron*, 136 F.4th at 1336. Use of the term is not a ruling on whether chapter 717 does or does not itself effectuate an abandonment.

## III. Class certification: the view from 30,000 feet

A court can properly certify a class only after conducting a "rigorous analysis" under Federal Rule of Civil Procedure 23. *See, e.g.*, *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1266 (11th Cir. 2009). Before turning to that analysis, two fundamental principles should be noted.

First, on class certification, the question is not which side is correct on the merits of the overall case or even on subsidiary issues. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."). The merits will be determined later—either for the class, if one is certified, or just for the plaintiffs, if not. A class-certification decision determines who will benefit from or be bound by a later decision on the merits—not who will

prevail on the merits. An argument opposing certification that depends on an assertion that the defense is correct on the merits is a losing argument.

Second, it is not essential to class certification that all class members are identically situated, that the case presents only common issues, or that resolution of the common issues will determine precisely who is and who is not entitled to precisely what relief. *See Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012). "When appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). "Rule 23(c)(4) gives the court ample power to 'treat common things in common and to distinguish the distinguishable.'" 7AA C. Wright & A. Miller, *Federal Practice and Procedure* § 1790 (3d ed. 2005) (quoting *Jenkins v. United Gas Corp.*, 400 F.2d 28, 35 (5th Cir. 1968)). *Jenkins* is binding authority in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc). The theory is that "the advantages and economies of adjudicating issues that are common to the entire class on a representative basis may be secured even though other issues in the case may need to be litigated separately by each class member." Wright & Miller, *supra*, § 1790.

This case is chock full of issues that are appropriate for class treatment, even though there also are individual issues that—depending on the later ruling on the merits—might or might not be susceptible to resolution on a classwide basis.

Page 7 of 17

Common issues appropriate for class treatment include the following:

(1) does chapter 717 supersede common-law subjective abandonment, rendering that concept inapplicable?

(2) if subjective abandonment remains an applicable concept, does it apply only to property the owner knew of, or can it apply also to property the owner only *should have* known of?

(3) if subjective abandonment remains an applicable concept, is the burden of showing abandonment of property held by the State under chapter 717 on the party asserting abandonment—as was true at common law—or does chapter 717, either prior to or after the recent amendments, switch the burden?

(4) does the old version of chapter 717 effect a statutory abandonment, and if so is the abandonment consistent with due process?

(5) do the chapter 717 amendments effect a statutory abandonment, and if so is the abandonment consistent with due process?

(6) if so, do the amendments apply retroactively to property that came into the State's hands prior to the amendments?

(7) is the right to interest limited to property that was earning interest before the State took custody of it under chapter 717?

(8) does the Eleventh Amendment as construed in *Edelman* bar some relief that would otherwise be available?

(9) can the State offset against a person's recovery the cost incurred by the State to collect, hold, maintain records of, and disburse the person's funds?

These are all issues that can properly be resolved on a classwide basis if the specific requirements of Rule 23 are met.

## IV. Class certification: the required rigorous analysis

A party who seeks class certification has the burden to establish all four requirements set out in Rule 23(a) and at least one of the requirements set out in Rule 23(b). *See, e.g.*, *Vega*, 564 F.3d at 1265; *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997).

### *A. Rule 23(a)*

The Rule 23(a) elements are often referred to as "numerosity, commonality, typicality, and adequacy of representation." *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1190 (11th Cir. 2009) (*quoting Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1187–88 (11th Cir. 2003)). This order addresses each in turn.

Rule 23 refers to a class "representative," not to a named plaintiff, because the rule applies to defendant classes as well as plaintiff classes. This case involves

Case 4:22-cv-00255-RH-MAF Document 111-1 Filed 10/14/26 Page 50 of 58



only a proposed plaintiff class, so this order uses "representative" and "named plaintiff"—and sometimes simply "plaintiff"—interchangeably.

***1. Numerosity***

The numerosity element requires the class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[W]hile there is no fixed numerosity rule, 'generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.'" *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). A named plaintiff "need not show the precise number of members in the class." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983). But numerosity is not satisfied by speculative inferences. *Vega*, 564 F.3d at 1267.

What matters here is the number of persons for whom the State is holding funds under chapter 717 or perhaps only the number of persons likely to assert claims to the funds. Either way, the number is in the thousands. The plaintiffs have met the numerosity requirement. The defendants do not assert the contrary.

***2. Commonality***

The commonality element requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The action "must involve issues that are susceptible to class-wide proof." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). A common contention must be "capable of classwide resolution"

such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Courts should not fully consider the merits at the certification stage, but courts do look to the elements of a claim to determine whether commonality exists. *See, e.g., Vega*, 564 F.3d at 1272 (looking at the elements of a breach-of-contract claim to establish commonality).

This case will turn in substantial part on the common issues listed above. Those issues all have common answers.

The defendants assert, though, that even when common issues are resolved, providing relief to any given individual will require a determination of whether the individual has a valid claim at all—whether funds ostensibly held by the State for the individual are indeed payable to the individual and if so how much is due. Quite so. But the commonality requirement is met when there are common questions with common answers; the requirement is not defeated just because a case also presents individual issues. Indeed, nearly all class actions potentially present individual questions about whether purported class members qualify for whatever classwide relief may ultimately be granted. Thus, for example, class actions in the decade following enactment of the Civil Rights Act of 1964 resulted in injunctions desegregating large public and private employers, despite individual

questions about whether any individual class member would qualify for the jobs or pay at issue:

> Once class-wide discrimination has been demonstrated to result in disproportional earnings, a class-wide decision that back pay is appropriate can be discerned without deciding which members of the class are entitled to what amounts. This is no different than affirmative injunctive relief, in the form of red circling or advance entry, which on remand will be applied to particular individuals and not the whole class.

*Pettway v. Am. Cast Iron Pipe Co.*, 494 F.2d 211, 257 (5th Cir. 1974) (Tuttle, J.) (citations omitted); *see also Jenkins v. United Gas Corp.*, 400 F.2d 28, 35 (5th Cir. 1968).

If this action results in a ruling that the failure to pay interest is an unconstitutional taking, relief may include, at least, a classwide declaration. In due course, individual class members will be able to seek appropriate relief, perhaps through the administrative claims process.

The plaintiffs have met the commonality requirement.

### ***3. Typicality***

The typicality element requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The plaintiffs must "possess the same interest and suffer the same injury as the class members." *Dukes*, 564 U.S. at 348–49 (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).

Here the named plaintiffs' claim is typical of all class members' claims in most respects. There may, however, be differences. Some proposed class members' property came into the State's hands before the amendments to chapter 717, some after. For statutory abandonment, issues might include whether a person would be likely to voluntarily walk away from a claim of a given size and whether the statute provides due process. Likelihood to walk away might be different for small claims like the plaintiffs' than for larger claims; it is unlikely anyone would go to the trouble to assert a $0.01 claim, while few would walk away from a $1,000 claim. For due process, the statute imposes substantially different notice requirements for claims under $50 than for larger claims.

These differences do not defeat class certification, at least at this time. If it turns out later that the named plaintiffs lack standing to assert claims of which their own claims are not typical, the class definition can be amended. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."). Similarly, if at some point it turns out entitlement to relief turns entirely on whether any individual class member subjectively abandoned a claim, so that the controlling issue is not common and the named plaintiffs' claims are not typical, the class can be decertified. *See, e.g.*, *G.H. v. Dep't of Juv. Just.*, No. 4:19-cv-431 (N.D. Fla. Sep. 2, 2022) (decertifying a class after developments showed commonality was no longer satisfied).

For now, though, there are plainly common issues on which the plaintiffs' claims are typical and on which they have standing. Thus, for example, the plaintiffs have standing to assert on behalf of all proposed class members that chapter 717 does not effect a statutory abandonment at all.

***4. Adequacy***

The final Rule 23(a) requirement is that the named plaintiffs will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This encompasses two separate inquiries: whether any substantial conflict of interest exists between the named plaintiff and the class and whether the named plaintiffs will adequately prosecute the action. *See, e.g.*, *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). Class counsel also must be adequate. *See* Fed. R. Civ. P. 23(g).

Here there are no substantial conflicts between the named plaintiffs and the class. If there are minor differences in issues that would be emphasized by small-dollar claimants like the plaintiffs as opposed to those with larger claims, the differences ultimately will make no difference. The named plaintiffs are adequate representatives at least on the common issues. Their attorneys are adequate class counsel. The plaintiffs have met the adequacy requirement.

### *B. Rule 23(b)(2)*

Having met the requirements of Rule 23(a), the plaintiffs must also meet one of the requirements of Rule 23(b). Under Rule 23(b)(2), class treatment is appropriate when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

This case easily meets this requirement. The defendants will, unless enjoined, continue to return property to claimants without paying interest. They will do this for one reason and one reason only: chapter 717 calls for the return of property without paying interest. The defendants thus have "refused to act on grounds that apply generally to the class." A declaration that this violates the Takings Clause—if not also an injunction or other relief—will be "appropriate respecting the class as a whole."

The plaintiffs have met the 23(b)(2) conditions.

### *C. Ascertainability*

Rule 23(a) does not explicitly speak to "ascertainability"—to whether the members of the class can be presently ascertained. The Eleventh Circuit has said, in a case involving a proposed 23(b)(3) class, that ascertainability is an "implied prerequisite" to certification. *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th

Cir. 2021). The same is not true, however, for a (b)(2) class. *See Carpenter v. Davis*, 424 F.2d 257, 260 (5th Cir. 1970) ("It is not necessary that the members of the class be so clearly identified that any member can be presently ascertained."). *Carpenter* is binding authority in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

Because *Cherry* and *Carpenter* involve different parts of Rule 23, their *holdings* are not in conflict. And the different treatment is understandable: ascertainability presents a much different issue under Rule 23(b)(3) than under Rule 23(b)(2). But if the decisions were deemed in conflict, *Carpenter*, as the prior decision, would control. *See Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 862 (11th Cir. 2020) ("Our adherence to the prior-panel rule is strict, but when there are conflicting prior panel decisions, the oldest one controls"); *see also Jones v. DeSantis*, No. 4:19-cv-300-RH, 2020 WL 5646124, *5–6 (N.D. Fla. Apr. 7, 2020) (adhering to *Carpenter*).

None of this matters here. The proposed class is sufficiently ascertainable. There is no risk that any ruling ultimately entered on the merits will leave unclear what was decided or whom the ruling binds. The ruling will bind the named plaintiffs, all class members as of that time whom the plaintiffs have standing to represent, and, with respect to the named plaintiffs and those class members, the defendants.

**V. Class Definition**

The parties have debated the proper class definition, but the issue is not as complicated as they have made it. Funds the State holds under chapter 717 are held for *someone*, even if it is not clear and has not been established who the someone is. If, as the plaintiffs claim on the merits, the funds must be returned with interest, the interest must be paid to whoever is entitled to the funds. Defining a class does not require sorting out who is entitled to the funds.

Unless modified based on later developments, the class will consist of all persons—as defined in § 717.101(27)—on whose behalf the State holds funds under chapter 717 as of the date of the judgment. Claimants who cash out prior to that time will not be class members because they will no longer have claims to funds held by the State.

**VI. Conclusion**

For these reasons,

IT IS ORDERED:

1. The plaintiffs' class-certification motion, ECF No. 80, is granted.

2. This class is certified: All persons for whom the State of Florida holds funds under Florida Statutes chapter 717 as of the date of the judgment in this action except (a) persons to whom the State will pay interest under 31 C.F.R.

§§ 515.205(f) and 515.554 and (b) United States judges to whom this case is assigned at any time and members of their immediate families.

3. The class representatives are the named plaintiffs in this action: Alieda Maron and Lawrence Maron.

4. Class counsel are the attorneys who have appeared for the named plaintiffs in this action.

SO ORDERED on September 29, 2026.

s/Robert L. Hinkle
United States District Judge